### In re Jeffrey W. & Sandra A. KORTZ, Debtors.

### No. 02–50424.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Sept. 27, 2002.

---

Morris H. Laatsch, Akron, OH, for debtors.

Michael F. Lorber, Dennis Reimer Co LPA, Twinsburg, OH, for creditor.

## ORDER GRANTING DEBTORS' MOTION FOR CONTEMPT OF COURT AND SANCTIONS

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter came on for hearing on June 26, 2002 on the Debtors' Motion for sanctions for repeated violations of the automatic stay[1] (the "Motion") filed on May 13, 2002 against ditech.com.[2] Participating in the evidentiary hearing were the Debtors, Jeffrey and Sandra Kortz, and their counsel Morris Laatsch. No representative from ditech.com appeared for the hearing.[3] During the hearing the Court received evidence in the form of exhibits and the testimony of the Debtors.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). Based on the testimony and exhibits presented at the hearing, the Court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

#### A. Ditech.com's Notice of and Participation in Case and Actions to Collect Pre-petition Debt

The Debtors filed their chapter 7 petition on February 1, 2002. Ditech.com was

---

1. Captioned a "Motion for Contempt of Court."

2. This is as the name appears on ditech.com's Notice to the Court.

3. The original June 12, 2002 hearing was continued on June 12th. No one from ditech.com appeared for the June 12th hearing either.

listed on Schedule D—Creditors Holding Secured Claims—as holding a second mortgage in the amount of $45,597.41 on the Debtors' former residence at 6556 Smucker Drive, Westfield, Ohio. Ditech.com was served with notice of the § 341 meeting which states, *inter alia:*

### Creditors May Not Take Certain Actions

The filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. If you believe that this stay should be modified or lifted, you may file a motion seeking such relief from the Court.

On April 2, 2002 ditech.com filed a "Notice of Appearance and Request for all Notices, Plans and Disclosure Statements" in this case requesting that all such materials be sent to its offices at the following address: ditech.com, 500 Enterprise Road, Suite 150, Horsham, PA. [Docket # 6]. The Notice from ditech.com was signed by Delphine Trotter.

On April 25, 2002 the Court entered an Order on a Motion for Relief from Stay filed by GMAC Mortgage Corporation, listed on Schedule D as holding the first mortgage on the Debtors' former residence, granting the Motion for Relief from Stay and identifying the property at issue as 6556 Smucker Drive, Westfield, Ohio. The Certificate of Service on the Order indicates that ditech.com was served at the address it had requested. [Docket # 9]. The Debtors had moved from the property some time in March and relocated to Michigan.

. On May 13, 2002 the Debtors filed the Motion and served it upon ditech.com. [Docket # 13]. The return of service filed with the Court by the Debtors indicates that the Motion was sent by certified mail to the address ditech.com had requested and that it was received by Ralph Stanton at ditech.com on May 15, 2002. [Docket # 15]. In their Motion the Debtors alleged that ditech.com had contacted them on approximately 15 occasions post-petition to demand payment on the second mortgage.[4] Attached to the Motion were copies of three messages received by Mr. Kortz at his place of employment, two from Bill Brown and one from Mrs. Givison. Also attached was a letter from ditech.com to Mr. Kortz, dated March 25, 2002, stating that the account was 60 days past due, that he was in default and that the company "retain[ed] the right to begin foreclosure proceedings." The letter was sent to Mr. Kortz at the Debtors' new address—43234 Raftingway Court, Apt. 2903, Novi, Michigan. The letter was unsigned but provided an 800 number which the Debtors were directed to use to contact ditech.com. The 800 number in the letter corresponds to the 800 number on two of the messages taken for Mr. Kortz at his workplace.

On June 12th the Debtors filed a Motion to Reset Hearing Date. The hearing was adjourned to June 26th so that Mr. Kortz could attend. However, no representative from ditech.com appeared either on June 12 or June 26.

---

**4.** A statement of the obvious: The first mortgagee was granted relief from the stay to pursue its state law remedies with respect to the mortgaged property. As the holder of the second mortgage, ditech.com would benefit to the extent that the value of the property realized in a foreclosure sale was sufficient to pay some or all of its second mortgage. This relief in favor of the first mortgagee did not free either mortgagee to pursue the mortgagors personally.

## B. Ditech.com's Post–Petition Serial Communications with the Debtors

Mr. Kortz testified that he and his wife moved to Novi, Michigan where he is employed as a claims supervisor for an insurance company. He stated that he had received phone calls from ditech.com at his place of employment and copies of the messages taken for him were introduced into evidence. The messages indicate that the calls were placed on March 14th and March 19th by Bill Brown and on March 28th by Mrs. Givison. As previously noted, the March 19th and 28th messages have the 800 number corresponding to the 800 number on ditech.com's letter of March 25th.

Mr. Kortz testified that he returned the calls from his home and that he told the representatives of ditech.com that he had filed bankruptcy. He also told them the name and phone number, including the 800 number, of his counsel Morris Laatsch.[5] In addition, he testified that he was called out of a meeting at work to answer a phone call from ditech.com on April 22nd. He further stated that he did not know how ditech.com got the phone number of his workplace and that he did not know whether ditech.com had told his employer that he had filed a bankruptcy petition. He testified that he had taken off work to attend the hearing and that he and his wife had traveled 185 miles from Michigan to Ohio.

Mrs. Kortz testified that she had been a legal secretary when she was employed but that on her doctor's orders she was no longer employed. In early 2001 she was diagnosed with quadrant aschemia, a condition which damaged her heart valves and for which she takes nitroglycerin as need-ed. She stated that this condition is exacerbated by stress and that her doctor told her to limit those activities which cause stress. Since her illness she has not worked outside the home. She testified that she was looking forward to returning to work and had been avoiding stressful situations as instructed. She further testified that she did not tell ditech.com that she had an illness that could be compounded by stress. She testified that ditech.com called her many times and that she had made notes of the calls on her calendar.

Her calendar was entered into evidence and the notations on the 2002 calendar were as follows:

| | |
|---|---|
| February 18 | Mr. Roberts Ditech 10:20 Told him to call ML [6] |
| February 28 | Roberts Ditech 1:30 |
| March 4 | Ms. Williams Ditech Answer Machine |
| March 7 | Ditech msg |
| March 14 | Ditech msg |
| March 25 | Williams Ditech Told her to call ML |
| April 11 | Ditech |
| April 22 | Mr. Roberts Ditech answer machine called Jeff [at] work |
| May 6 | Ditech |
| May 16 | Ditech 11:15 told them to call ML |
| May 20 | Ditech answer machine |
| June 4 | Ditech told to call ML |

Mrs. Kortz testified that the first time ditech.com telephoned her she spoke with a Mr. Roberts. She explained to him that she and her husband had filed bankruptcy and that he should call Morris Laatsch, their counsel. She even called Mr. Roberts back to give him their case number and Laatsch's phone number, including his 800 number. She testified that this first call on February 18th was civil, but that the tone of the balance of the calls became progressively angry, threatening and stressful over the next several months. The calls were made by Mr. Roberts, who refused to tell her his first name and told

---

5. The Court notes that Mr. Laatsch has provided his clients and their creditors easy, and even free, means to communicate with him.

6. ML are the initials for Debtors' counsel Morris Laatsch.

her that his full name was "unimportant to her," Mr. William Brown, Ms. Givison and Ms. Williams.

The March 7th and 14th and the April 11th calls resulted in messages being left on her home answering machine. Mrs. Kortz stated that the calls became so stressful to her that she often did not answer the telephone and allowed the answering machine to take the message. She described the messages as "angry" and "threatening"—demanding that she provide the caller with their bank account number and stating that ditech.com would withdraw funds from their account to cover the arrearage. Ditech.com's representatives further stated that ditech.com "did not care" that the debtors had filed bankruptcy. On April 25th Mrs. Kortz spoke to Ms. Williams and told her what she had told Roberts on February 18th. On April 22nd Roberts again called her at home, and then called her husband at work, insisting that he be called out of a meeting to speak with him.

On May 16th Roberts called her at home again and told her that the payments were in arrears and that ditech.com would garnish her husband's wages if she did not provide it their bank account number so ditech.com could withdraw funds. He also told her that her husband might lose his job, a representation she said she believed and which frightened her. She again told Roberts that they had filed bankruptcy and asked him not to call her husband at work but to contact Laatsch instead. This call was placed a day after ditech.com had received the Motion. On May 20th ditech.com left a message on the Kortz's home answering machine. On June 4th, three weeks after receipt of the Motion, ditech.com called Mrs. Kortz again and she told them to call Laatsch, as she had done on May 16th. Mrs. Kortz stated that she does not know how ditech.com obtained her home telephone number in Michigan as it is unlisted and unpublished.

Mrs. Kortz also testified that she and her husband did not intend to keep the Ohio home and that they were living in a new residence, the new address having been provided to the Court and to Laatsch. She further stated that there had been no foreclosure action prior to the filing of the petition but that she and her husband were aware that the Relief from Stay had been granted as to the Ohio house.

## II. CONCLUSIONS OF LAW

### A. Section 362

Section 362 provides in pertinent part:

(a) Except as provided in subsection (b) if this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of—

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title ...

The automatic stay becomes effective at the moment a debtor's bankruptcy petition is filed. 11 U.S.C. § 362(a). Once effective, the automatic stay applies to "all entities" and to "any act to collect, assess, or recover" a claim pursuant to § 362(a)(6). Unless otherwise ordered by the bankruptcy court, the protection afforded by the automatic stay continues until a discharge is granted or denied, or the case is closed or dismissed. § 362(c)(2).

 "[T]he legislative history makes clear that [§ 362(a)(6)] was intended to prevent creditors from harassing debtors after a petition is filed." *NLT Computer Servs. Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253, 1257 (6th Cir.1985) (citing House Report No. 95–595, 95th

Cong., 1st Sess. 340–2 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963; Senate Report No. 95–989, 95th Cong., 2nd Sess. 49–51 (1978); U.S.Code Cong. & Admin.News, p. 5787). From the evidence it was clear that the calls were meant to harass and intimidate the Debtors and were certainly intended to collect on ditech.com's prepetition claim against the Debtors. In fact, this is the most egregious case concerning violation of the stay to come before this judge.

■ Section 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

The term "willful," while not defined in the Bankruptcy Code, has been interpreted to mean simply acting intentionally and deliberately while knowing of a pending bankruptcy. *See, e.g., Cuffee v. Atlantic Business & Community Dev. Corp. (In re Atlantic Business & Community Corp.),* 901 F.2d 325, 329 (3rd Cir.1990); *Knaus v. Concordia Lumber Co. Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir.1989); *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). Ditech.com's request for notices in the case makes clear that it was functionally aware of the Debtors' bankruptcy filing. Ditech.com had notice of the bankruptcy—it received a Notice of the first meeting of creditors, and even sent a Notice of Appearance to the Court requesting notices be sent to it at a certain address. Its representatives were repeatedly informed that the Debtors had filed for bankruptcy, even after it received the Motion. The evidence proved emphatically that ditech.com intended to make the threatening and harassing calls, intended the intimidation of the Debtors and intended to col-

lect its prepetition claim against the Debtors.

In addition, an individual who harms another, intentionally or unintentionally, runs the risk that the person he injures may have a condition causing the injury to be far more serious than had such person not had the condition. This is the rule that the defendant takes the plaintiff as he finds him, sometimes called the "eggshell skull" rule. This rule is in effect in both Ohio and Michigan and would be analyzed similarly under the law of either state. *See Pace v. Ohio Dep't of Transp., et al.* (1991), 62 Ohio Misc.2d 184, 185, 594 N.E.2d 187; *Wilkinson v. Lee,* 463 Mich. 388, 396, 617 N.W.2d 305 (2000). The Debtors filed their petition in Ohio and the calls were made to their work and home telephones in Michigan.

Both the Michigan and Ohio cases cite to the language set forth in 2 Restatement of the Law 2d, Torts (1965) 502, Section 461, which states that:

> The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct. Comment a. A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act is negligent.

*See also Reeg v. Hodgson* (1964), 1 Ohio App.2d 272, 278, 202 N.E.2d 310.

■ The Court finds that ditech.com willfully and flagrantly violated the automatic stay set forth in the Code and caused stress to Mrs. Kortz which had a high probability of exacerbating her existing medical condition. The Court also finds that the stress caused by ditech.com's representatives may cause Mrs.

Kortz to remain out of the workforce longer than otherwise necessary. Ditech.com's April 22 call to Mrs. Kortz in which its agent who had been repeatedly informed of the bankruptcy filing by the Kortz's told her that her husband could lose his job and the same agent's call on the same day to Mr. Kortz's place of work in which the agent insisted that he be called out of a meeting to take the call are tactics that must be branded as intolerable.

■ When pre-petition creditors ignore § 362 of the Code, they do so at their peril. Punitive damages are appropriate to deter a pattern of behavior that ignores the automatic stay. *See In re Riddick,* 231 B.R. 265, 269 (Bankr.N.D.Ohio 1999). In *Riddick* this Court was inclined to minimize the assessment of punitive damages when a holder of a pre-petition claim could produce evidence of a corporate policy and practice of abiding by the automatic stay. *Id.* This Court continues to believe that enforcement of the automatic stay should be focused primarily on encouraging future compliance.

■ In this case, however, because ditech.com did more than simply ignore the Debtors' filing, but through several of its agents stated its complete disregard for the bankruptcy protection of Debtors, punitive damages will be awarded in an amount that is intended to get the attention of the management of ditech.com in pursuing future compliance with the automatic stay. This is not a case of simple ignorance or excusable neglect. In this case ditech.com, through its representatives, stated that it "did not care" about the bankruptcy filing, did not contact Debtors' counsel despite being provided an 800 number, called the Debtors repeatedly at home and at work, and sent no representative to the hearing. Instead of taking appropriate notice of the filing, ditech.com acted belligerently. After notices from the Court and being told at least six times that a petition had been filed, ditech.com continued to harass and threaten the Debtors. Even after being served with the instant Motion, the violative behavior continued.

### B. Sections 105(a) and 510(c)

Section 105(a) of the Bankruptcy Code provides as follows:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

■ Section 105 provides this Court the power to issue an Order to assure that creditors abide by the provisions of the Code, including the provisions of § 362 which impose the automatic stay and "in appropriate circumstances" punitive damages. Under the facts of this case punitive damages in a large dollar amount are essential. This Court finds that the facts in this case show such egregious and troubling behavior on the part of ditech.com, such contempt for the bankruptcy process, and such harassment of the Debtors that significant punitive damages are in order. Ditech.com did everything in its power to trample on the rights of the Debtors and other creditors by attempting to collect on its claim outside the bankruptcy process. Because ditech.com was attempting to prefer itself over other creditors by seeking payment from Debtors that would have violated 11 U.S.C. § 549(a), this Court awards 50% of the punitive damages herein assessed to the chapter 7 trustee for

distribution to unsecured creditors.[7]

Section 510(c) states in pertinent part:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

■ In *First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Services, Inc.)*, 974 F.2d 712, 718 (6th Cir.1992), the Court adopted the legal standard for equitable subordination set forth in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir.1977). *Mobile Steel* set forth three conditions to be shown by a preponderance of the evidence to justify equitable subordination: (1) the claimant must have engaged in some kind of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

■ "The inequity which will entitle a bankruptcy court to regulate the distribution to a creditor by subordination or other equitable means ... may arise out of any unfair act on the part of the creditor which affects the bankruptcy results to other creditors and so makes it inequitable that he should assert a parity with them in the distribution of the estate." *In re Kansas City Journal–Post Co.*, 144 F.2d 791, 803–4 (8th Cir.1944). There is no doubt from the evidence in this case that ditech.com is guilty of inequitable and gross misconduct. In addition, ditech.com attempted to confer, and would have succeeded in conferring, an unfair advantage on itself as compared to other holders of claims in this case had the Debtors not held their ground in the face of ditech.com's harassment. Allowing ditech.com to participate in the distribution would harm other creditors because it would gain something of value for its violations and dilute their distribution. This Court finds that on the egregious facts of this case, equitable subordination of ditech.com's claim is especially appropriate for the reason that ditech.com should not be rewarded in any way for its behavior. The subordination is consistent with the provisions of the Code. The claim of ditech.com shall be equitably subordinated to all other allowed claims in this case.

**THEREFORE, IT IS HEREBY ORDERED:**

1. That by not later than **October 10, 2002** ditech.com shall pay to the Debtors, by certified check through their counsel Morris Laatsch, as actual damages the sum of **$133.20,** representing $.36 per mile for 370 miles to attend the hearing.

2. That for the cumulative willful violations of the automatic stay by not later than **October 10, 2002** ditech.com shall pay to the Debtors, by certified check through their counsel Morris Laatsch, the sum of **$25,750.00.** In addition, by not later than **October 10, 2002** ditech.com shall also pay by certified check to

---

7. With respect to this component of the estate, the chapter 7 trustee is requested to limit his trustee fee application to only 50% of the maximum allowed by the Code. This would not apply to any application by any counsel whom he might retain for collection purposes.

the chapter 7 trustee, Harold Corzin, *$25,750.00,* to be administered in accordance with 11 U.S.C. § 726. The punitive damages, totaling *$51,500.00,* are calculated below. Because of the repetition of the communications and the condition of Mrs. Kortz, the Court has assessed progressively increasing punitive damages for the successive violations. Specifically, the punitive assessments are as follows:

| | |
|---|---:|
| February 28th (call) | $ 250.00 |
| March 4th (call) | $ 500.00 |
| March 7th (call) | $ 750.00 |
| March 14th (2 calls) (one to work, one home) | $ 2,000.00 |
| March 19th (call to work) | $ 2,000.00 |
| March 25th (call) | $ 2,000.00 |
| March 25th (letter) | $ 2,000.00 |
| March 28th (call) | $ 2,000.00 |
| April 11th (call) | $ 3,000.00 |
| April 22nd (2 calls) (one to work insisting debtor be called out of meeting, one home) | $ 6,000.00 |
| May 6th (call) | $ 6,000.00 |
| May 16th (call) (one day after service of Motion) | $ 6,000.00 |
| May 20th (call) (after service of Motion) | $ 10,000.00 |
| June 4th (call) (after service of Motion) | $ 10,000.00 |
| **Total** | **$ 51,500.00** |

3. That any claim of ditech.com in this case is subordinated to each and all other allowed claims pursuant to 11 U.S.C. § 510(c).

4. That by not later than *October 10, 2002* Morris Laatsch shall file with the Court and serve on ditech.com a compilation of his costs and fees generated by the filing of the Motion and the actions of ditech.com in violation of the automatic stay.

5. This Court retains jurisdiction to require ditech.com to award attorney's fees to Mr. Laatsch, and oversee the collections of all damages to the trustee and to the Debtors awarded herein.

**IT IS SO ORDERED.**