In re Cheryl L. BIVENS, Debtor.

No. 01–35566.

United States Bankruptcy Court,
N.D. Ohio.

Aug. 18, 2004.

Gordon R. Barry, Toledo, OH, for debtor.

Anthony B. DiSalle, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Debtor's Motion to Show Cause why Fifth Third Bank, a secured creditor in this case, should not be held in contempt for violating the automatic stay of 11 U.S.C. § 362(a). After considering the arguments presented by the Parties, the Court finds that the Debtor's position has merit, and thus, as sought in her Motion, sanctions in the form of monetary damages will be imposed against Fifth Third Bank. Beginning with the relevant facts of this case, the basis for the Court's decision is set forth below.

As security for a note executed by the Debtor, Fifth Third Bank holds a first, mortgage lien against the Debtor's residence; both the note and the mortgage list the address of the residence as 618 Ogden, Toledo, Ohio. In September of 2001, the Debtor, Cheryl Bivens, filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. Included in and handled by her Chapter 13 plan of reorganization, which was confirmed by this Court in December of 2001, was the Debtor's mortgage debt on her residence. In both her petition and her plan of reorganization, the Debtor listed the address of her residence as 618 Ogden, Toledo, Ohio 43609. In addition, since the commencement of this case, all notices sent by the Court to Fifth Third Bank listed the 618 Ogden address as the Debtor's mailing address.

In early 2004, during the pendency of her plan of reorganization, and for reasons that are not entirely clear, Fifth Third Bank came under the erroneous belief that the Debtor had physically vacated her residence. Based on this belief, Fifth Third Bank, in accordance with their internal procedures, contacted the Debtor's insurance company so as to make appropriate arrangements for this change of circumstances, specifically, seeking to have adjustments made in coverage so as provide indemnity for vandalism and malicious mischief during the period of vacancy. (Doc. 130, Ex. A). Fifth Third Bank then sought to accomplish notice of its action upon the Debtor, but was unsuccessful in doing so, having sent its notice to a former out-of-state address of the Debtor. As a consequence, the Debtor did not become aware of Fifth Third Bank's actions until May 8, 2004, when she received notice from her insurance company that her policy was to be cancelled.

Immediately after receiving notice of the pending cancellation, the Debtor contacted her attorney, who then filed the instant show cause motion for contempt. Directly upon receiving notice of this Motion, Fifth Third Bank informed the Debtor's insurance company of its error.

## DISCUSSION

In this case, the Debtor seeks punitive damages in the amount of $1,000.00 plus attorney fees for Fifth Third's acknowledged violation of the automatic stay of § 362(a). Determinations concerning violations of the automatic stay are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G)/(O). *Davis v. Conrad Family Ltd. Partnership (In re Davis)*, 247 B.R. 690, 694 (Bankr.N.D.Ohio 1999). Thus, this Court has the jurisdictional authority to enter a final order in this matter.

 Damages for a violation of the automatic stay are statutorily provided for under paragraph (h) of § 362 which provides "[a]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances,

may recover punitive damages." This section was added to the Bankruptcy Code in 1984, and was intended to supplement the only previously available remedy for a stay violation: Contempt. Based, therefore, upon § 362(h)'s supplementation for the remedy of contempt, this provision will be applied, unless the context clearly requires otherwise, to actions in which damages are sought for a stay violation. *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 902–03 (Bankr.E.D.Pa.1987). *See also In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641, 643 (Bankr.N.D.Fla.1987) (holding party in civil contempt and subject to the assessment of damages pursuant to § 362(h)). Thus, although her motion was couched in terms of contempt, as the Court cannot discern any compelling reason to dissociate § 362(h) from the Debtor's action to receive damages for a stay violation, the standard for awarding damages through the application of § 362(h) will be applied.

An award of damages is mandatory under § 362(h) when a violation of the automatic stay is found to be "willful." *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D.Ohio 2000). As used in § 362(h), "willful," unlike many other contexts, does not require any specific intent. *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999). Rather, for purposes of § 362(h), "willful" has simply been interpreted to mean any intentional and deliberate act undertaken with knowledge—whether obtained through formal notice or otherwise—of the pending bankruptcy. *In re Kortz*, 283 B.R. 706, 712 (Bankr. N.D.Ohio 2002); *Patton v. Shade*, 263 B.R. 861, 866 (C.D.Ill.2001). Within this definition, such "willful" conduct is unarguably present here; by communicating false information to the Debtor's insurance company, Fifth Third Bank can be said to have deliberately and intentionally, albeit not necessary with malice, caused a notice of insurance cancellation to be issued to the Debtor. And, by its participation in her plan of reorganization, Fifth Third Bank must be deemed to have had both notice and knowledge of the Debtor's pending bankruptcy.

Under § 362(h), however, mandatory damages for a "willful" violation of the automatic stay are limited to "actual damages, including costs and attorneys' fees ..." Based upon the representations of Debtor's counsel, which this Court accepts as accurate, such damages in this case are confined solely to attorney fees; here, 2 hours at $175.00 per hour for a total of $350.00. Still, as applied to § 362(h), the possible imposition of punitive damages cannot be overlooked as this provision goes on to provide that "in appropriate circumstances, [a debtor] may recover punitive damages." *In re Baggs*, 283 B.R. 726, 729 (Bankr.C.D.Ill.2002).

For purposes of § 362(h), an award of punitive damages is not conditioned upon the existence of a finding of any actual damages. *Id.* All the same, the imposition of punitive damage is not an action to be taken lightly, and in this regard, this Court has always exercised great restraint in making such an award. *In re Perviz*, 302 B.R. 357, 373 (Bankr. N.D.Ohio 2003). *See also In re Barboza*, 211 B.R. 450 (Bankr.D.R.I.1997) (for stay violations, punitive awards are reserved for cases in which violator's conduct amounts to something more than bare violation justifying compensatory damages or injunctive relief.). Generally speaking then, cases in which punitive damages have been awarded involve conduct that is egregious, vindictive or intentionally malicious. *See, e.g., In re Clayton*, 235 B.R. 801, 811 (Bankr.M.D.N.C.1998).

In the instant matter, Fifth Third Bank's conduct cannot be said to

rise to such a high level of culpability; of importance, once confronted with its transgression, Fifth Third Bank took immediate steps to rectify the situation. Still, by § 362(h)'s use of the words "appropriate circumstances," as opposed to any reference to the transgressor's state of mind, a high level of culpable intent is not necessarily a prerequisite to an award of punitive damages. To hold otherwise, besides running counter to the plain-meaning approach repeatedly applied by the Supreme Court of the United States when interpreting the Bankruptcy Code,[1] would also run counter to the purpose underlying the existence of punitive damages in general: To deter similar conduct in the future. *In re Baggs,* 283 B.R. at 729. Therefore, even in the absence of any overt wrongful intent, this Court will follow the rule, as has been applied by other courts, that an award of punitive damages may still be appropriate for a violation of the automatic stay when there is a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law. *In re Gullett,* 230 B.R. 321 (Bankr.S.D.Tex.1999), *order rev'd on other grounds,* 253 B.R. 796 (S.D.Tex. 1999), *aff'd,* 220 F.3d 585 (5th Cir.2000); *In re Gagliardi,* 290 B.R. 808, 820 (Bankr. D.Colo.2003); *In re Barboza,* 211 B.R. 450, 452–53 (Bankr.D.R.I.1997).

■■■ Upon implementation of this standard, there exists one salient feature in this matter: When informed that the Debtor's property was vacant, Fifth Third Bank did not take any steps to verify the information, such as by contacting the Debtor's attorney, but instead took immediate measures that, while ostensibly protective of its lien interest in the property, were done in total disregard to both the automatic stay and to the Debtor's freehold interest in her property. Such conduct, while not automatically necessitating the imposition of punitive damages, is highly indicative of acts that are reckless or otherwise undertaken in bad faith. As such, the burden is clearly placed upon Fifth Third Bank to offer a viable explanation(s) for its actions.

As an explanation, Fifth Third Bank put forth that the Court should take into consideration the cumulative weight of these factors: (1) it reasonably relied upon the false representations of a third party that the Debtor's residence was vacant; (2) upon being informed of the vacancy of her residence, it sent notice thereof to the Debtor; (3) because the Debtor never submitted a change of address, as required by the terms of the note, such notice was sent to the Debtor's former residence in Michigan; and (4) upon learning of its error, steps were immediately taken to rectify the situation. (Doc. No. 130, at pg. 1–2). While these points are to a certain degree exculpatory in nature, especially the last, they lack the necessary persuasive weight, whether viewed separately or together, to eliminate the need to impose punitive damages.

First, Fifth Third Bank's position concerning notice ignores that the notification provided to the Debtor's insurer was, in the first place, a stay violation. Consequently, what Fifth Third Bank has essentially attempted to argue is that it should

---

1. *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992); *Union Bank v. Wolas,* 502 U.S. 151, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991); *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *Midlantic Nat.Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981).

be rewarded for attempting to perfect notice of its stay violation on the Debtor. Logic, however, dictates that a stay violation cannot be cured by simply providing notice of the stay violation. The same logic also applies to Fifth Third Bank's reliance on a third party; Fifth Third Bank, having approved of the act of their agent, cannot now disavow responsibility for their action. *Accord Kolstad v. American Dental Ass'n*, 527 U.S. 526, 542–43, 119 S.Ct. 2118, 2128, 144 L.Ed.2d 494 (1999).

Even setting this aside, Fifth Third Bank's position that the Debtor, herself, is to blame for its failure to perfect notice on her—by the Debtor failing to provide a change of address as required by the terms of the note and mortgage—is disingenuous. Both the mortgage and note set forth the Debtor's current residence, not a former out of state residence, as her proper mailing address, that being 618 Ogden, Toledo, Ohio 43609. Thus, it would reasonable to conclude—in fact, it would be the most logical reading—that the Debtor was only required to provide notice of a change of address if she moved from the 618 Ogden property. Going further, no indication was given that the funding provided by Fifth Third Bank was meant to finance the Debtor's purchase of an investment property, as opposed to a residence; thus, it must be presumed that the Debtor would reside at the 618 Ogden property. Finally, it has not gone unnoticed to the Court that the requirement in its note and mortgage that the Debtor provide notice of a change of address was meant, at least in part, to cover exactly the situation Fifth Third Bank believed was present here: the Debtor's relocation from the 618 Ogden property to another residence.

Finally, it simply cannot be overlooked that Fifth Third Bank is a sophisticated creditor who must have recognized the need to bring an appropriate action before the Court when seeking to change the terms of the Debtor's insurance. Although in certain limited circumstances *nunc pro tunc* order approving a creditor's prior action are entered by a court when the circumstances so require, this case is not representative of such a situation. *In re Stockwell*, 262 B.R. 275 (Bankr.D.Vt. 2001). At no point was Fifth Third Bank ever put under the impression that the Debtor's residence was not insured. Thus, at no point was Fifth Third Bank's interest in the Debtor's property ever seriously placed in jeopardy. Instead, Fifth Third Bank contacted the Debtor's insurer simply to "make the appropriate adjustments to provide coverage for vandalism and malicious mischief during this period of vacancy." (Doc. 130, Ex. A). However, such an act seems highly surreptitious; besides implying that a standard homeowner's policy of insurance does not provide such coverage, it also supposes that Fifth Third Bank did not require the Debtor to have such coverage; a circumstance which, although simply conjecture without the actual production of her policy, seems very out of the ordinary for a sophisticated creditor like Fifth Third Bank.

■ Once an award of punitive damages is found to be appropriate, factors to be considered in determining the amount of the award include, but are not limited to the following: (1) the nature of the creditor's conduct; (2) the nature and extent of harm to the debtor; (3) the creditor's ability to pay damages; (4) the level of sophistication of the creditor; (5) the creditor's motives; (6) and any provocation by the debtor. *In re Baggs*, 283 B.R. 726 (Bankr. C.D.Ill.2002). As applied here, the Court has already mentioned that Fifth Third Bank, upon learning of its error, took immediate steps to rectify the situation, thus providing a mitigating reference point in

setting damages. On the other hand, and also just discussed, Fifth Third Bank is a highly sophisticated creditor with significant financial resources who undertook actions highly vexatious in nature against what appears to be an average consumer debtor. Therefore, when these considerations are weighed against each other, the Court finds that, under the particular circumstances as they exist in this matter, the imposition of $1,000.00 in punitive damages is appropriate.

For these reasons, judgment will be rendered against Fifth Third Bank in the total amount of $1,350.00, of which $350.00 represents attorney fees, while $1,000.00 represents punitive damages. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, in accordance with 11 U.S.C. § 362(h), the Debtor, Cheryl Bivens, be, and is hereby, awarded One Thousand dollars ($1,000.00) as punitive damages.

It is **FURTHER ORDERED** that, in accordance with 11 U.S.C. § 362(h), attorney, Gordon Barry, as legal counsel for the Debtor, be, and is hereby, awarded professional fees in the amount of Three Hundred Fifty dollars ($350.00).

It is **FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, enter monetary judgments in accordance with the above orders.