**In re Norman/Laura PAWLOWICZ, Debtors.**

**No. 03–36979.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 5, 2005.

---

Gordon R. Barry, Toledo, OH, for debtors.

Anthony B. DiSalle, Toledo, OH, trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Hearing on the Debtors' Request for Monetary & Punitive Damages and Attorney Fees. Prior to this Hearing, the Court, being satisfied that proper notice had been provided, adjudicated Quality Jewelers & Loan Company in contempt after it failed to defend itself against the Debtors' Motion for violation of the automatic stay of 11 U.S.C. § 362(a). (Doc. No. 113). At the Hearing held in this matter, the Debtors offered evidence in support of their position for damages, with Quality Jewelers & Loan Company again failing to appear or otherwise defend. The Court has now had the opportunity to consider this evidence, as well as the applicable law, and hereby finds that the Debtors are entitled to an award of damages in the amounts set forth herein.

The Debtors' instant action against Quality Jewelers & Loan Company, (hereinafter referred to as the "Creditor") originates from a pawnbroker transaction conducted between the Parties. In August of 2002, the Debtor, Norman Pawlowicz, obtained a loan from the Creditor in the amount of $400.00, using as security a number of family valuables. (Ex. No. 1). Beginning in October of the same year, and continuing until January of 2004, the Debtors made a total of six payments on the loan, totaling $424.14. Of this amount, $42.24 was applied to principal, with the remainder going to interest and other finance charges. (Ex. No. 4). In May of 2004, the Creditor deemed the Debtors to be in default, causing then those items provided as security to be forfeited.

During the course of the Parties' relationship,—specifically, in September of 2003—the Debtors commenced a case in this Court under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1). In their petition, the Creditor was listed as holding an unsecured claim. The Debtors' proposed plan of reorganization, as later confirmed by the Court, set forth that unsecured creditors were to be paid the full amount of their allowed claims. (Docs. 3 & 19).

### DISCUSSION

The automatic stay of 362(a) enjoins virtually all collection efforts, and is meant to give the debtor a breathing spell from his or her creditors. *Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 276 (8th Cir.1983). Creditors who violate the stay are subject to sanctions, including monetary damages. *In re Bunton*, 246 B.R. 851 (Bankr.N.D.Ohio 2000) When, as here, a stay violation involves a debtor who is an "individual," § 362(h) governs an award of damages, providing:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.[1]

██ A determination as to both propriety and amount of damages under this section is a "core proceeding" over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(A)/(G)/(O); *Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 871 (Bankr.E.D.Tenn.2000).

██ As set forth in the statute, there are two types of damages recognized in § 362(h): actual and punitive. In this matter, the Debtors seek both, asking for $5,000.00 in actual damages, plus attorney fees, and $10,000.00 in punitive damages. (Doc. No. 45). The Debtors' basis for actual damages consists of four individual components: (1) the conversion of those items offered by the Debtors as security, and which the Creditor wrongfully deemed to be forfeited; (2) emotional distress; (3) lost wages; and (4) legal costs. As it concerns punitive damages, the Debtors opine that the Creditor's actions rise to the level to justify making such an award, it having "repeatedly threatened, coerced [and] harassed Debtors all for the purpose of collecting their debt that was subject to 11 U.S.C. § 362." (Doc. No. 45, at pg. 1).

██ Starting with the issue of "actual damages," § 362(h) makes such an award mandatory when an entity commits a "willful" violation of the stay. For purposes of § 362(h), a finding of "willful" is appropriate upon it being established that the creditor knew of the automatic stay and that its actions were intentional. *TranSouth v. Sharon (In re Sharon)*, 234 B.R. 676 (6th Cir. BAP 1999); *In re Bivens*, 324 B.R. 39, 42 (Bankr.N.D.Ohio 2004). This is a lower threshold as compared to other contexts,[2] where the term "willful" has been interpreted to encompass the element of specific intent. In a similar way, a good faith belief by the creditor that it had the right to take the action which violated the stay will not insulate the act from meeting the definition of "willful." *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995).

██ In this matter, the Court has already adjudicated the Creditor in contempt for a violation of the automatic stay. (Doc. No. 113). A finding of contempt requires that a contemptor, with knowledge thereof, have violated a definite and specific order of the court. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.1998). Like with § 362(h), no specific intent is required. It logically follows then, that with § 362(h) not requiring any specific intent to sustain a finding of "willful," while at the same time foregoing good faith as a defense, that this Court's finding of contempt may be equated with a finding of "willful" for purposes of awarding statutory damages.

██ Yet, while § 362(h) now mandates an award of damages, it is still the debtor's burden to demonstrate, by at

---

1. Section 362 was extensively amended by the Bankruptcy Abuse Prevention and Consumer Protection Act which became effective on October 17, 2005. These amendments are, however, inapplicable with respect to cases, such as this, commenced under Title 11 before its effective date, *see* Pub.L. 109–8, § 1501, set out as a note under 11 U.S.C.A. § 101. A comparable provision to § 362(h) is now set forth in paragraph (k) of § 362.

2. *Compare Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 976–78, 140 L.Ed.2d 90 (1998) (holding that the term "willful" as used in § 523(a)(6), providing for the nondischargeability of a debt, requires a finding of specific intent.)

least a preponderance of the evidence, that the damages sought were actually suffered. *In re Flack*, 239 B.R. 155, 162 (Bankr.S.D.Ohio 1999); *Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 (Bankr. M.D.N.C.1998). In an action brought under § 362(h), this requires showing that, (1) a legally recognized injury was suffered, (2) that the injury relates to the damages sought, and (3) that the amount of the damages can be computed with reasonable certainty; a damage award cannot be based on mere speculation, guess or conjecture. Of these three requirements, only the last merits further discussion as it relates to the four separate types of "actual damages" sought by the Debtors; conversion, emotional distress, lost wages and legal fees all constitute legally recognized injuries which, in this matter, may be said to relate to the damages sought.

 The measure of damages for the first type of injury sustained by the Debtors—that of conversion—is the value of the property converted. *See, e.g., Brumm v. McDonald & Co. Securities, Inc.*, 78 Ohio App.3d 96, 603 N.E.2d 1141, 1146 (1992). To this end, the Debtors testified that the value of those items converted by the Creditor was well in excess of the $5,000.00 that they seek as damages. However, while this testimony was not challenged, the Court is not convinced that it represents an accurate picture as to the appropriate value of the converted property.

First, no documentary evidence was provided to corroborate the values espoused by the Debtors. But more important are the Debtors' actions themselves: they pawned the converted property for just $400.00. And while the Court fully recog-

nizes that, in a pawnbroker transaction, the full value of the property offered as security will not be realized, the discrepancy here between the alleged value of the converted property versus the intrinsic value the Debtors first attached to the property when exposing it to the marketplace is simply too large to ignore. In this way, when inconsistencies arise as between a person's testimony, and their prior actions, the maxim, "actions speak louder than words" will most often lead to the correct result. And when placed under this scrutiny, the Court hereby finds that $1,000.00 represents a more accurate figure as to the true value of the converted property.

A similar problem arises with respect to the Debtors' request for damages relating to emotional distress. First, as a purely legal matter, there exists a serious question as to whether such an injury is compensable under § 362(h).[3] Although the Sixth Circuit Court of Appeals has not directly addressed the matter, a district court within this Circuit has, just recently holding that:

> there can be little doubt that when § 362(h) was enacted in 1984, Congress was concerned not with providing debtors compensation for emotional harms, but with providing explicit statutory authorization for the 'only previously available remedy for a stay violation: Contempt.'

*U.S. v. Harchar*, 331 B.R. 720, 730 (N.D.Ohio 2005).

 Still, even if compensable under § 362(h), the law has always been wary of claims of emotional distress as they are so easy to manufacture. Consequently, in the

---

**3.** *Aiello v. Providian Fin'l. Corp.*, 239 F.3d 876, 879 (7th Cir.2001) (not finding that emotional distress constitutes "actual damages" for purposes of § 362(h)). *But see Fleet Mort-* *gage Group, Inc. v. Kaneb*, 196 F.3d 265, 269–70 (1st Cir.1999) (allowing recovery for emotional injuries).

absence of highly unusual circumstances, strong corroborating evidence must be offered, usually in the form of medical evidence, to sustain an award of damages for emotional distress. *Patton v. Shade*, 263 B.R. 861, 867 (C.D.Ill.2001) (medical or other corroborating evidence must be offered to support an award of actual damages for emotional distress; and such evidence must show that the debtor suffered something more than just fleeting and inconsequential distress, embarrassment, humiliation and annoyance).

██ But here no such corroborating evidence exists,—making it impossible to support a finding of emotional distress—with the Debtors' evidence again confined to their oral testimony whereby they simply iterated that the converted property had sentimental value, some being family heirlooms. Also weakening the Debtors' position is the fact that they pawned the very items to which they ostensibly attached a large amount of sentimental value. Framing this point in the context of a question: if the items of converted property really invoked the degree of attachment as espoused by the Debtors, why were they willing to pawn them for just $400.00?

██ In contrast, however, to the prior discussion, the final two grounds put forth by the Debtors, that for lost wages and legal fees, have been satisfactorily substantiated. The Debtors put forth that they collectively seek $1010.00 for lost wages which were incurred when they had to take days off work to visit with their attorney, as well as attend the Hearings held in this matter. As for legal fees, Debtors' legal counsel submitted that he has billed $1,045.00 to handle matters related to the Creditor's violation of the stay;

this is based upon a billable hourly rate of $200.00 for five hours work, plus $45.00 in expenses. Together, these requests have an air of consistency and reasonableness.

First, as to consistency, the time expended by Debtors' legal counsel to handle this matter roughly corresponds to those days the Debtors needed to miss work; thus, each corroborates the other. As to reasonableness, the time expended by both the Debtors and their legal counsel is not large in light of the Creditor's transgressions. Additionally, the amount of the Debtors' lost wages, although on the high-end, appears reasonable in light of their monthly wages as set forth in their bankruptcy petition.[4] And as it regards legal fees, counsel's hourly rate is consistent with the lodestar measurement used in this Circuit when computing legal fees which among other things may look to the experience and ability of counsel. *Boddy v. United States Bankr.Court (In re Boddy)*, 950 F.2d 334 (6th Cir.1991).

██ In addition to "actual damages", the Debtors also seek punitive damages. Section 362(h) authorizes an award of such damages "in appropriate circumstances." The term "appropriate circumstances" is not defined but has generally been held to require egregious misconduct on the creditor's part such as that which is taken in arrogant defiance of federal law. *In re Davis*, 265 B.R. 453, 457 (Bankr. N.D.Fla.2001); *In re Bishop*, 296 B.R. 890 (Bankr.S.D.Ga.2003). While a high standard, the Debtors have sustained their burden in showing that the Creditor's conduct rises to this level.

At its most basic level, the Creditor, having notice of this bankruptcy, found it appropriate to unilaterally ignore the oper-

---

4. In their bankruptcy petition filed in 2003, the Debtors claimed a joint monthly income of over $5,500.00. (Doc. No. 1).

ation of the stay as provided in § 362(a). But what is particularly troublesome here is that this event occurred well into the progression of the Debtors' Chapter 13 case, and after the Debtors had made multiple payments to the Creditor. And when considering these three related considerations, the Court simply cannot understand why the Creditor decided when it did to declare the Debtors' account in default: (1) the Debtors, albeit not factoring in finance charges, had fully repaid the amount originally financed; (2) their payment history, although not exactly regular, was at least consistent in that periodic payments were being made; and (3) the Debtors' confirmed plan was to pay unsecured creditor's 100%. Consequently, when looked at collectively, the only conclusion that this Court can draw is that the Creditor simply found it to be more expedient to ignore federal bankruptcy law. This, of course, cannot be tolerated, and makes an award of punitive damages in this matter particularly appropriate.

 As for the amount of the award of punitive damages, the Debtors' action seeks the sum $10,000.00, with the Debtors at the Hearing asking for an additional unspecified sum. However, while this Court does find the Creditor's actions deserving of the imposition of punitive damages, the amount sought by the Debtors is too high. Punitive damages are not meant to compensate, but are instead to punish. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). When applied to a stay violation, the primary purpose of an award of punitive damages becomes that which is sufficient to cause a change in the creditor's behavior. *In re Riddick*, 231 B.R. 265, 269 (Bankr.N.D.Ohio 1999). The award should thus be commensurate with an amount that will deter future transgressions, but no more. Among other things,

such an inquiry should take into account, the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, and the level of sophistication of the creditor. *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 825–26 (1st Cir. BAP 2002).

 Under this legal structure, the Court finds that an award of $5,000.00 in punitive damages is an appropriate amount to deter future violations. The actual damages in this case are not large; and from this Court's understanding of the situation, the Creditor is not a large business, but rather in the nature of a closely-held corporation, with limited experience and contacts with the bankruptcy process. Of course, if in a future matter the Creditor continues to disregard federal bankruptcy law, the Court will have to seriously reconsider this position.

In summation, the Court finds that the Debtors are entitled to an award of "actual damages" in the amount of $3,055.00, based upon the following calculations: $1,000.00 for conversion; $1010.00 for lost wages; and $1,045.00 for legal fees and expenses. In addition, the Court finds that an award of $5,000.00 in punitive damages in this case is appropriate. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that judgment is hereby rendered in favor of the Debtors, Norman and Laura Pawlowicz, against the Creditor, Quality Jewelers & Loan Company, in the amount of $8,055.00, plus interest at the rate as provided in 28 U.S.C. § 1961.