**In re Thomas N. COUSINS, Debtor.**

**Thomas N. Cousins, Plaintiff**

v.

**CitiFinancial Mortgage Company, Defendant.**

**Bankruptcy No. 06–30003.**

**Adversary No. 08–3178.**

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

April 28, 2009.

Lester R. Thompson, Dayton, OH, for Plaintiff.

J. Michael Debbeler, Jeffrey M. Hendricks, Graydon Head & Ritchey LLP, Cincinnati, OH, for Defendant.

## DECISION DENYING DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is before the court on Defendant CitiMortgage, Inc.'s Motion to Dismiss the Plaintiff's Amended Complaint [Adv. Docs. 10 and 33][1]; the Plaintiff–Debtor Thomas N. Cousins' Response to Motion to Dismiss [Adv. Doc. 23] and the Reply Memorandum in Support of CitiMortgage, Inc.'s Motion to Dismiss [Adv. Doc. 28 and 33].

In its motion, Defendant CitiMortgage, Inc.[2] ("CitiMortgage") argues two alternative reasons why the amended complaint [Adv. Doc. 32] filed by Plaintiff–Debtor Thomas N. Cousins ("Debtor") alleging an automatic stay violation should be dismissed. First, CitiMortgage asserts that the amended complaint fails to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) because CitiMortgage's action of sending the Debtor an "information account statement"

1. CitiMortgage first filed a motion to dismiss the Debtor's original complaint [Adv. Doc. 10]. During a later telephone conference, the Debtor indicated that he would not be pursuing a class action as alleged in the original complaint. Subsequently, the Debtor filed an amended complaint without the class action allegations. Because the remainder of the allegations in the amended complaint are the same as those in the original complaint, CitiMortgage filed a motion to dismiss the amended complaint [Adv. Doc. 33] adopting the arguments from its original motion to dismiss and reply memorandum.

2. CitiMortgage, Inc. is the successor-in-interest by merger to CitiFinancial Mortgage Company, Inc. [Adv. Doc. 10].

after his bankruptcy filing does not amount to a *per se* violation of the automatic stay. Second, CitiMortage claims that the amended complaint must be dismissed for failure to state a claim as well as a lack of standing pursuant to Fed. R.Civ.P. 12(b)(1) because the Debtor failed to allege any compensable actual damages resulting from CitiMortgage's actions.

As more fully explained below, the court determines that the allegations in the complaint state a claim for a violation of the automatic stay, a determination largely based upon the particular composition of the account statement allegedly sent by CitiMortgage to the Debtor, especially the inclusion of a payment coupon. In addition, because resultant attorney fees alone can constitute actual damages under 11 U.S.C. § 362(k), the Debtor has sufficiently alleged compensable damages. Therefore, the Debtor has stated a claim and has standing such that the CitiMortgage Motion to Dismiss must be denied.

### FACTUAL BACKGROUND

Solely for the purpose of determining whether the Debtor's amended complaint should be dismissed, the court deems the facts as stated in the Debtor's amended complaint to be true. The Debtor's residence is encumbered by a mortgage owned or serviced by CitiMortgage [Adv. Doc. 32, ¶¶ 7, 12]. Following confirmation of his Chapter 13 plan, the Debtor received documents from CitiMortgage that included payment coupons [*Id.*, ¶ 1]. An example of the documents received by the Debtor was attached to the Complaint as an exhibit [*Id.*, Ex. 1]. The document was labeled a "Mortgage Account Statement" and included this language at the top in capital letters:

THIS MORTGAGE ACCOUNT STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY, AS THE DEBT MAY HAVE BEEN INCLUDED IN A BANKRUPTCY ACTION, OR MAY HAVE BEEN DISCHARGED. THIS IS NOT AN ATTEMPT TO COLLECT, RECOVER OR OFFSET THE MORTGAGE INDEBTEDNESS AGAINST YOU PERSONALLY, BUT OUR RECORDS REFLECT THAT WE HOLD A SECURITY INTEREST IN YOUR PROPERTY.
IN PENDING CHAPTER 13 CASES, THE PLAN STATUS AND TERMS MAY NOT BE REFLECTED ON THIS ACCOUNT STATEMENT.

[*Id.*]. Underneath this language was a statement of the Debtor's monthly payment, prior balance and current balance[3] and a phone number to call to discontinue future notices [*Id.*]. At the bottom of the document was a "Voluntary Payment Coupon" from CitiMortgage which included a place for the Debtor to write in the "total amount enclosed" and gave an address for the Debtor to use to mail the payment [*Id.*].

The payment coupons led the Debtor to believe that he was to pay the requested sums of money outside the Chapter 13 plan and, had he not communicated with his counsel prior to making the payment, he would have made such payments to CitiMortgage [*Id.*, ¶ 3]. Debtor was damaged by the actions of CitiMortgage in that he was forced to expend time and effort in consulting his bankruptcy attorney and attending at least one office consultation with his bankruptcy attorney to discuss the nature of the payment coupons [*Id.*, ¶ 4]. CitiMortgage's actions further damaged the Debtor by causing emotional

---

**3.** All monetary amounts, including the past and current balances, were redacted on the copy of the statement attached to the Debtor's amended complaint [Adv. Doc. 32, Ex. 1].

distress [*Id.*, ¶ 5]. The Debtor was under the belief that creditors would cease contacting him post-bankruptcy and that all payments would be made via his Chapter 13 plan [*Id.*]. Upon receiving payment coupons in the mail, the Debtor was distraught that the contact was continuing [*Id.*].

## *LEGAL ANALYSIS*

### A. *Legal Standard for Determining Motion to Dismiss*

CitiMortgage requests dismissal of the Debtor's amended complaint under Fed. R.Civ.P. 12(b)(1) and (6), incorporated in bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012. CitiMortgage argues that the Debtor failed to state any claim upon which relief can be granted and lacks standing to assert the claim.

Rule 12(b)(1) provides for dismissal for a lack of subject matter jurisdiction and Rule 12(b)(6) provides for dismissal when the plaintiff fails to state a claim.[4] Under either standard, the court is to accept as true the well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party who, in this matter, is the Debtor. *Terlecky v. Hurd (In re Dublin Securities, Inc.)*, 197 B.R. 66, 69 (S.D.Ohio 1996).[5]

To survive dismissal under Rule 12(b)(6), the Debtor's complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir.2001). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) (noting that the accepted pleading standard is that "once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint"). This standard does not require that a complaint attacked by a Rule 12(b)(6) motion to dismiss provide detailed factual allegations. *Bell Atlantic*, 127 S.Ct. at 1964. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*, at 1964–65 (further citations omitted) (holding that the factual allegations must be enough to raise a right to relief above the speculative level).

While the material elements must be asserted, the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts in support of each cause of action. *Limor v. Buerger (In re Del–Met Corp.)*, 322 B.R. 781, 793 (Bankr. M.D.Tenn.2005). Rather, the Rules require a short and plain statement of the claim that will give defendants fair notice of what the plaintiff's claim is and upon what grounds it rests. *Id.* Furthermore, the court's responsibility on a motion to dismiss is to assess the sufficiency of the claims asserted in the complaint and not to weigh the evidence. *Perry v. United Parcel Service*, 90 Fed.Appx. 860, 861 (6th Cir.2004) (noting that the complaint may be dismissed only if the plaintiff has failed to allege facts that, if true, would entitle him to relief).

---

4. Dismissal for lack of standing is proper under Rule 12(b)(1) or 12(b)(6). *Terlecky v. Hurd (In re Dublin Securities, Inc.)*, 197 B.R. 66, 69 n. 4 (S.D.Ohio 1996).

5. While a motion to dismiss for lack of standing under Rule 12(b)(1) can involve a factual attack and require the parties to submit affidavits of jurisdictional facts going beyond those in the complaint, no such factual attack is asserted by the movant in this case. *See In re Saffold*, 373 B.R. 39, 43 (Bankr.N.D.Ohio 2007).

## B. *Automatic Stay Violation*

██ Upon the filing of a debtor's bankruptcy petition, an automatic stay arises which precludes creditors from taking almost any action to obtain property of a debtor's estate or to collect from a debtor upon a prepetition debt outside the bankruptcy process. 11 U.S.C. § 362(a). The automatic stay is among the most fundamental debtor protections in bankruptcy law and its scope in protecting debtors and debtor property is broad. *Rijos v. Vizcaya (In re Rijos)*, 263 B.R. 382, 389 (1st Cir. BAP 2001); *O'Neal v. Beneficial of Tennessee, Inc. (In re O'Neal)*, 165 B.R. 859, 862 (Bankr.M.D.Tenn.1994) (citing *Smith v. First America Bank (In re Smith)*, 876 F.2d 524, 525 (6th Cir.1989)). The scope of the automatic stay and its basic purpose are well stated in the legislative history to § 362:

> It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally.

H.R.Rep. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6296–97; S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835–36. Thus, the automatic stay is intended to provide not only a breathing spell from creditors' collection efforts, but also to safeguard creditors' rights by preventing " 'different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets.' " *Rijos*, 263 B.R. at 389 (further citations omitted).

██ Of all the actions prohibited by the automatic stay, the most relevant to the matter at hand arises pursuant to § 362(a)(6) which prohibits creditors from taking "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" 11 U.S.C. § 362(a)(6). Again, the legislative history reflects Congress's intention that this prohibition be broadly interpreted to stop all creditor collection activities:

> Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.

H.R.Rep. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6298; S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836–37.

██ Although the language of the statute and the legislative history appear to prohibit literally all collection efforts, the judicial decisions applying the language to specific situations are varied and nuanced. Certainly it is true, as CitiMortgage emphasizes, that not all communications from a creditor to a debtor are prohibited by § 362(a). *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir.2000) ("Something more than mere contact must be alleged in order to state a

claim under § 362."). For example, it has been held that the sending of informational account statements and notifications by mortgage holders directly to a debtor do not violate the automatic stay as long as the statements or notifications are not coercive. *Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 137–38 (Bankr.D.Hawai'i 2007). Indeed, a debtor often needs information in account statements to determine what is owed to a creditor as well as notifications from a mortgage holder as to increases in property taxes or insurance that will require higher payments to the mortgage holder for escrow purposes. *Id.; Pultz v. NovaStar Mortgage, Inc. (In re Pultz)*, 400 B.R. 185, 190–92 (Bankr.D.Md.2008).

■ Furthermore, certain creditor activities that might otherwise fall into the category of collections are sanctioned by the Bankruptcy Code, such as solicitation and negotiation of a reaffirmation agreement and requests for payment according to the terms of such an agreement. *Pertuso*, 233 F.3d at 423. Because such contacts by the creditor are part of the statutory scheme for resolving claims in bankruptcy, these contacts do not violate the automatic stay. *Id.* (noting that to read § 362 to prohibit all contacts between creditors and debtors would undermine § 524(c) which permits reaffirmation agreements). As the case law suggests, determining whether a violation of the automatic stay occurs can be complicated and depends on such specifics as what type of communication was sent to the debtor and whether the communication

had a purpose other than collection of the debt outside the scheme contemplated by the Bankruptcy Code. *Connor*, 366 B.R. at 136–37.

■ In this case, the Debtor alleges that following confirmation of the Debtor's Chapter 13 plan, a plan which provided for regular payments to CitiMortgage through the trustee, CitiMortgage continued to send the Debtor statements related to the pre-petition debt. Each statement noted a past and current balance and had a "voluntary payment coupon" attached to the bottom. The payment coupon sent by CitiMortgage included a place for the Debtor to write in the "total amount enclosed" and gave an address for the Debtor to use to mail the payment.

CitiMortgage characterizes the document sent to the Debtor as an "informational mortgage account statement" and, as to the top half of the document, the court agrees. The information provided in the top half of the statement provides a past and current balance amount which, at least prior to confirmation of the Debtor's plan, might have been helpful to determine what was owed to CitiMortgage.

However, the "voluntary payment coupon" attached at the bottom does not have such an informational purpose. The payment coupon, with a place to write in the amount enclosed and address for sending payments, has no other purpose that the court can conceive except to collect the debt outside of the bankruptcy case, an act prohibited by § 362(a)(6).[6] *In re*

---

6. CitiMortgage cites several cases, including the Sixth Circuit's *Pertuso* decision, for the proposition that "mere requests for payment" by a creditor do not violate the automatic stay. *Pertuso*, 233 F.3d at 424. However, *Pertuso* involved payment negotiations within the context of solidifying the terms of a reaffirmation agreement, a process sanctioned by

the Bankruptcy Code in 11 U.S.C. § 524. *Id.* Because certain creditor requests for repayment, such as those made pursuant to a reaffirmation agreement or, as another example, payment coupons sent to a debtor who continues making current mortgage payments directly to the mortgage holder pursuant to the terms of a confirmed chapter 13 plan, are

*Draper*, 237 B.R. 502, 506 (Bankr.M.D.Fla. 1999) (sending the Chapter 13 debtor an "informational statement" that included a payment coupon requesting voluntary payments outside the bankruptcy process violated the stay because "[t]he only credible reason to send such invoices on a monthly basis is to try to collect payments from debtors protected by the automatic stay"); *Connor*, 366 B.R. at 136–137 (explaining that the statement and payment coupon sent in *Draper* violated the automatic stay because the debtor did not need the information contained therein and payments to the secured mortgage creditor were already being made pursuant to a confirmed plan); *Harris v. Memorial Hosp. (In re Harris)*, 374 B.R. 611, 614 (Bankr. N.D.Ohio 2007) (concluding that that the creditor's act of sending two account statements with a detachable portion to send an amount due violated the automatic stay and noting that if the statements did not constitute an act to collect a debt as proscribed by § 362(a)(6), "then it is difficult to imagine what would").

■ In defense, CitiMortgage emphasizes the disclaimer language in the document, particularly a paragraph in all caps explaining that the account statement is for "informational purposes only," the debt may be included in a bankruptcy, and "in pending chapter 13 cases, the plan status and terms may not be reflected on this account statement." CitiMortgage notes that the statement also includes a telephone number that the Debtor could call to stop future statements from being sent. However, as noted by other courts reviewing similar language, such a self-serving disclaimer "does not obviate the fact that

the invoice seeks payment from the [d]ebtor" and such a collection action violates the stay "if it amounts to pressure on the debtor to pay." *Draper*, 237 B.R. at 505. *See also In re Joens*, 2003 WL 22839822, at *2–3 (Bankr.N.D.Iowa Nov.21, 2003).

The fact is that statements containing conflicting information like those allegedly sent in this case may be confusing to a debtor. Although the document states that it is an account statement for informational purposes only, it also includes a "current balance" and a payment coupon. A debtor paying his mortgage through trustee disbursements in a recently confirmed Chapter 13 plan may not understand that failure to remit a payment with this "voluntary" coupon, unlike the payment coupons received pre-bankruptcy, will not result in overdue payments and late penalties. Creditors should remember that "[d]ebtors just do not think like credit companies think. Debtors do not know the motives behind the various numbers printed on these statements ... and the purported bankruptcy disclaimer." *In re Sipe*, 2001 WL 35672616, at *4 (Bankr. W.D.N.C. July 18, 2001) (concluding that a mortgage holder violated the stay when he sent billing statements to a debtor with a confirmed chapter 13 plan in which the mortgage was to be paid through the plan). Furthermore, it is not unreasonable to suppose that some debtors would never read the disclaimer but merely react to the form of the document—an account statement and corresponding payment coupon—and thereby be misled into making an additional and unwarranted payment.

---

sanctioned by or part of the bankruptcy process, these requests do not violate the automatic stay. The court does not believe that the Sixth Circuit would extend that premise to continued requests for payments sent to a debtor by a secured creditor who is being

paid by the chapter 13 trustee pursuant to the terms of a confirmed chapter 13 plan. Such collection efforts *outside* of the bankruptcy process are unauthorized by the Bankruptcy Code and constitute a violation of the automatic stay.

The pressure that such a confusing statement may place on a debtor violates both the language and the purpose of the automatic stay. A continued request for payment by a creditor being paid by the trustee through a confirmed chapter 13 plan is clearly an attempt at collection of a prepetition debt outside the process authorized by the Bankruptcy Code. Such continued collection efforts deny the debtor the "breathing spell" that the automatic stay was intended to protect. In addition, a chapter 13 debtor with a confirmed plan is already on a budget given that he has pledged all of his disposable income to the chapter 13 trustee to be disbursed to his creditors. Should CitiMortgage's statements confuse or pressure the Debtor into paying more than what was already provided for CitiMortgage through the confirmed chapter 13 plan, there is a significant risk that the Debtor will fall behind on other payments and his plan will fail. Thus, CitiMortgage's mailings jeopardize the orderly process for distributing funds to creditors created by the confirmed plan and the Bankruptcy Code to the detriment of both the Debtor and the Debtor's other creditors.

For these reasons, the court concludes that the Debtor's allegations in the complaint state a claim against CitiMortgage for a violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(6).

## C. *Damages*

CitiMortgage argues that even if the Debtor states a claim for an automatic stay violation, the Debtor's complaint should be dismissed because there are no allegations of recoverable damages. Under 11 U.S.C. § 362(k)(1), an individual injured by a "willful"[7] violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).[8] While this language makes an award of actual damages mandatory upon proof of a willful violation of the automatic stay and injury, damages must still be proven and the award must be reasonable and supported by the evidence. *In re Parks*, 2008 WL 2003163, at *7 (Bankr.N.D.Ohio May 6, 2008); *In re Pawlowicz*, 337 B.R. 640, 645–46 (Bankr. N.D.Ohio 2005). The damages must be computable to a reasonable degree of certainty and cannot be based on mere speculation, guess, or conjecture. *Pawlowicz*, 337 B.R. at 646.

In this case, CitiMortgage argues that the Debtor alleges no pecuniary harm suffered as a result of the statements sent by CitiMortgage. Instead, the Debtor's allegations include only emotional damages caused by being "distraught" over receiving the statements plus attorney fees in the form of an office consultation and amounts needed to file and litigate this

---

7. Although neither party discusses the requirements for a "willful" violation of the automatic stay in the dismissal pleadings, the Debtor will be required to prove that a willful violation exists in order to be entitled to the damages described in § 362(k)(1). To prove that a stay violation is willful, the debtor need not prove that the creditor intended to violate the stay, but, instead, that the creditor knew of the automatic stay and that its actions were intentional. *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687–88 (6th Cir. BAP 1999); *In re Pawlowicz*, 337 B.R. 640, 645 (Bankr.N.D.Ohio 2005) (noting that "a good faith belief by the creditor that it had the right to take the action which violated the stay will not insulate the act from meeting the definition of 'willful'") (further citations omitted).

8. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the language of § 362(k)(1) was found in § 362(h).

adversary proceeding. CitiMortgage asserts that, absent allegations of pecuniary harm, the Debtor cannot recover solely for emotional damages and attorney fees.

 The court disagrees with CitiMortgage with respect to whether the Debtor alleges the type of damages that are recoverable pursuant to § 362(k)(1). More specifically, the language of this statute allows a debtor to recover "actual damages including costs and attorney fees." Although there is conflicting case law, bankruptcy courts in the Sixth Circuit have concluded that attorney fees are not in addition to actual damages but are a component of the actual damages recoverable under the language of § 362(k)(1). *See Harris,* 374 B.R. at 616 (noting that attorney fees are actual damages for purposes of § 362); *In re Gordon,* 2006 WL 4458370, at *4 (Bankr.N.D.Ohio Feb.8, 2006) (stating that costs and attorney fees are regularly awarded as actual damages for violations of the stay); *Pawlowicz,* 337 B.R. at 646; *Walker v. Midland Mortgage Co. (In re Medlin),* 201 B.R. 188, 194 (Bankr.E.D.Tenn.1996). The court concludes that the Debtor has sufficiently pleaded actual damages with his allegations that he was forced to consult with his attorney. Because these attorney fees constitute actual damages under the language of the statute, no other injury is required before awarding attorney fees.[9] *Harris,* 374 B.R. at 616.

The complaint sufficiently states a claim for monetary damages based on attorney fees, and, consequently, the court need not reach the sufficiency of the Debtor's allegations regarding emotional damages. Nonetheless, the court notes that there is some question as to whether emotional damages are compensable under § 362(k). *See United States v. Harchar,* 331 B.R. 720, 728 (N.D.Ohio 2005) (noting a split among the circuits and concluding that the Sixth Circuit would follow those courts determining that emotional damages were not compensable under § 362(h) (now § 362(k))). *But see Bailey v. Social Security Admin. (In re Bailey),* 2007 WL 2049007, at *5 (Bankr.S.D.N.Y. July 10, 2007) (concluding that courts rejecting emotional damages claims under § 362(k) may be viewing the statutory language too restrictively). Furthermore, even if they may be compensable, debtor requests for emotional damages have been flatly rejected when the alleged damages amount to nothing more than fleeting and inconsequential distress. *See Pawlowicz,* 337 B.R. at 646–47; *In re Skeen,* 248 B.R. 312,

---

**9.** This conclusion does not mean that any and all requests for attorney fees will be granted upon the finding of a willful violation of the automatic stay. In order to recover attorney fees as damages, the Debtor will have the burden of proving that the fees are reasonable and necessary. *Price v. Pediatric Academic Assoc., Inc.,* 175 B.R. 219, 221 (S.D.Ohio 1994). In making the determination, courts often consider whether the debtor or debtor's counsel took reasonable actions to resolve the matter in a non-litigious manner prior to filing an action for violation of the automatic stay, especially when the immediate damage to the debtor is minimal and contacting the creditor would not be burdensome. *Price,* 175 B.R. at 221–22 (while having a blanket rule requiring a debtor to notify a creditor to resolve a willful violation is not appropriate, the court may still consider whether a contempt motion is wasteful and unnecessary given that the burden of notifying the creditor of the violation would have been insignificant and no bad faith was shown); *In re Johnson,* 253 B.R. 857, 862 (Bankr.S.D.Ohio 2000) (noting that prior to initiating stay violation proceedings, counsel for debtors and creditors, as professionals, should try to amicably stop collection efforts and address any resultant damages). If no such mitigative steps are taken, courts often limit attorney fees to the reasonable value of legal services that should have been sufficient to resolve the matter in an expeditious manner. *Price,* 175 B.R. at 222; *Harris,* 374 B.R. at 616–18.

318–19 (Bankr.E.D.Tenn.2000) (debtor's feelings of anxiety after receiving several violative telephone calls were not compensable when there was no evidence that she sought medical treatment for the anxiety or was made incapable of going about her daily routine); *In re Hedetneimi,* 297 B.R. 837, 842 (Bankr.M.D.Fla.2003) ("a debtor must present some medical or other corroborating evidence showing that she suffered more than fleeting and inconsequential distress, embarrassment, humiliation, and annoyance"); *Meis–Nachtrab v. Griffin (In re Meis–Nachtrab),* 190 B.R. 302, 308 (Bankr.N.D.Ohio 1995) (noting that a debtor was not entitled to damages for becoming "stressed out," "nervous" and "nauseous"). Whether such damages should be awarded in this particular case is a matter to be determined on another day following an evidentiary hearing. At this stage, the court only concludes that the Debtor has sufficiently stated a claim for damages to withstand dismissal.

## CONCLUSION

For the reasons discussed above, the court concludes that the Debtor's complaint states a claim for a violation of the automatic stay and the allegations of actual damages are sufficiently alleged to withstand dismissal. CitiMortgage's motion to dismiss is denied.

**SO ORDERED.**