**In re Maurice T. JOHNSON, Diane R. Johnson, Debtors.**

No. 00–50404.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Sept. 29, 2000.

Maurice T. Johnson, Diane R. Johnson, Columbus, for Debtors.

William A. Semons, Tad A. Semons, Columbus, for Debtors.

Kenneth M. Richards, Luper, Sheriff & Neidenthal, Columbus, for Creditor.

Frank M. Pees, Jeffrey M. Kellner, Worthington, Office of the Chapter 13 Trustee.

Alexander G. Barkan, Columbus, Assistant United States Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law regarding damages to be awarded the Debtors, Maurice T. Johnson and Diane R. Johnson ("Debtors").

The award is based upon the willful stay violation of First Check Cash & Advance ("Creditor") and the Motion for Sanctions filed by counsel for the Debtors, William A. Semons ("Mr. Semons"), against former counsel for the Creditor, Kevin O'Brien ("Mr. O'Brien"). The Court has concluded that actual damages in the amount of $6,669.00, damages for emotional distress in the amount of $1,000.00, and punitive damages in the amount of $1,000.00 should be assessed jointly and severally against the Creditor, its owner and Mr. O'Brien, pursuant to section 362(h) of the United States Bankruptcy Code. A summary of the history of the dispute follows.

The Creditor is in the business of issuing "payroll advance loans" in amounts of less than $500.00. Garland T. Stonerock ("Mr. Stonerock") is the owner. Mr. Stonerock also owns Stonerock TV & Appliance, Inc. and Rental Mart, through which he is engaged in the business of consumer television, appliance and furniture sales and leasing. For the last two years, the Creditor has used the services of Mr. O'Brien as a collection attorney for its payroll advance loans.

On July 24, 1998, the Debtor, Mr. Johnson, obtained a payroll advance loan from the Creditor. In exchange, the Debtor issued a check for $345.00 on an account held jointly with his wife. Based upon the Debtor's default, on April 22, 1999, Mr. O'Brien commenced legal action against the Debtor, Mr. Johnson, in the Franklin County Municipal Court, Case No.1999 CVI 013463. On May 27, 1999, the Creditor obtained a judgment for $1,343.07. Mr. O'Brien, for the Creditor, then commenced garnishment proceedings against the Debtor, Mr. Johnson, on October 28, 1999.

On January 21, 2000, the Debtors filed the instant chapter 13 proceeding, and a Suggestion of Stay was telefaxed to the Franklin County Municipal Court on January 24, 2000, by Mr. Semons. Twice, Mr. Semons corresponded with Mr. O'Brien to obtain his assistance in gaining the release

of the garnishment, without success. On March 3, 2000, Mr. Semons even submitted a proposed agreed entry to Mr. O'Brien to obtain the release of the garnishment, also without success. Due to the failure of these efforts, the Debtors on March 21, 2000, filed a Motion for Contempt against the Creditor, pursuant to section 362(h) of the United States Bankruptcy Code. At that time, the Municipal Court was holding four post-petition garnishments in the total amount of $377.16. Funds garnished pre-petition were sent to the chapter 13 trustee by Mr. O'Brien, and these funds were ultimately forwarded to the Debtors by the trustee. This circuitous route of returning funds to the Debtors was Mr. O'Brien's only effort to be cooperative.

A mere two days after the filing of the Motion for Contempt, Mr. O'Brien, for the Creditor, responded in three ways. First, on March 23, 2000, a Motion for Fed. R.Civ.P. 11 Sanctions was filed. In this Motion, the Creditor sought sanctions against Mr. Semons on the basis that the Motion for Contempt was without justification and was a fraud upon the Court. Second, also on March 23, 2000, Mr. O'Brien filed a Memorandum Contra Debtors' Motion for Contempt. It was asserted that the Creditor was under no affirmative obligation to take any action to stop the garnishment proceeding it began, and that the matter was solely between the Debtors and the Clerk of the Franklin County Municipal Court.

Third, also on March 23, 2000, Mr. O'Brien, representing the Creditor and an unrelated entity, sent a professional grievance letter to the Disciplinary Counsel of the Ohio Supreme Court alleging that Mr. Semons, violating prior instructions, had been directly contacting collection clients. Based upon this letter, an investigation by the Disciplinary Counsel was launched. As a result, on April 24, 2000, Mr. Semons filed a Motion for Sanctions against Mr. O'Brien pursuant to LBR 9011–3 and LBR 2090–2, and on April 26, 2000, Mr. O'Brien

filed a Memorandum Contra on his own behalf.

On May 9, 2000, the Court conducted a hearing on the Debtors' Motion for Contempt and the Creditor's Memorandum Contra and Motion for Sanctions. At that hearing, the Court received testimony from the Debtor, Maurice T. Johnson, and an employee of the Franklin County Municipal Court. At the conclusion of the hearing, the Court found the Creditor had willfully violated the automatic stay by failing to obtain a release of the garnishment it had commenced. The Court also ordered the immediate release of all funds held by the Franklin County Municipal Court. The Court deferred the assessment of damages related to the stay violation and the pending sanction motions for separate consideration.

Even after this ruling, the Creditor, through Mr. O'Brien, continued to file pleadings. First, on May 16, 2000, a Motion to Add Franklin County Municipal Court Clerk as Respondent, Herein was filed. In that Motion, the Creditor, through Mr. O'Brien, sought to add the Municipal Court Clerk as a party. They premised this action on the theory that it was the Clerk's responsibility to stop the garnishment upon receipt of notice of a bankruptcy filing. Second, on May 16, 2000, the Creditor, through Mr. O'Brien, filed a Motion to Reconsider. In this Motion, they again asserted that it was the responsibility of the Municipal Court Clerk to stop the garnishment proceeding upon receipt of notice of a bankruptcy filing. Both of these Motions were denied by Orders entered on May 23, 2000. As for the attempt to add the Municipal Court Clerk, this Court observed, "First Check violated the automatic stay, and the addition of the Municipal Court Clerk would serve no purpose other than to unnecessarily delay and complicate this proceeding."

On May 22, 2000, the Debtors filed a Statement of Claimed Damages and requested $6,669.00 in actual damages, $1,000.00 for emotional distress, and punitive damages in an unspecified amount. On June 19, 2000, the Court conducted a hearing to decide damages related to the Creditor's willful stay violation and the two pending sanction motions. At that hearing, the Court was informed that the Creditor had retained new counsel, and that based upon the advice of new counsel had withdrawn its Motion for Sanctions. Mr. O'Brien was present but was represented by an attorney, Richard O. Wuerth. At that hearing, the Court received testimony from the owner of the Creditor, Mr. Stonerock.

Mr. Stonerock testified, that although he retained Mr. O'Brien as collection counsel, he was not aware that they had commenced any legal action and garnishment proceeding against the Debtor, Mr. Johnson, until he received a May 29, 2000, letter from Mr. O'Brien. In this letter, Mr. Stonerock testified that he was notified for the first time: a) there had been a willful stay violation finding; b) the Debtors were also seeking damages; and c) because the Debtors were also seeking sanctions against Mr. O'Brien, the Creditor should obtain new counsel. Mr. Wuerth on behalf of Mr. O'Brien asserted that this Court should not impose sanctions, because the institution of the attorney disciplinary proceeding was confidential and involved unrelated matters properly addressed though the Supreme Court of Ohio's disciplinary process.

■ The automatic stay provision of the United States Bankruptcy Code is an extremely valuable and fundamental element of a bankruptcy filing. Unfortunately, its significance is occasionally ignored and bears periodic restatement, as follows:

> It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or non judicial, in non bankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role

in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. *The stay protects the debtor by allowing it breathing space* and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others. *Hillis Motors, Inc. v. Hawaii Automobile Dealers Ass'n,* 997 F.2d 581, 585 (9th Cir.1993); *accord, In re Hughes–Bechtol, Inc.,* 117 B.R. 890, 905 (Bankr.S.D.Ohio.1990), *aff'd* 144 B.R. 755 (D.S.D.Ohio.1992), *aff'd in part, reversed in part,* 225 F.3d 659, 2000 WL 1091509 (6th Cir.2000) (emphasis supplied).

■ To preserve the integrity of the automatic stay provision and to protect consumer debtors and creditors, Congress in 1984 enacted a mechanism to address stay violations as follows: "An individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Congress intended this provision to be liberally construed to fortify the protections of the automatic stay. *In re Sharon,* 234 B.R. 676, 687 (6th Cir. BAP 1999).

■ To establish a willful stay violation, it must be shown that the party knew of the bankruptcy filing and then took some action. It does not matter whether the party had specific intent to violate the stay or acted in good faith based upon a mistake of law or legal dispute regarding its rights. *In re Sharon* at 687–688; *In re Ramirez,* 183 B.R. 583, 589 (9th Cir. BAP 1995); *In re Bloom,* 875 F.2d 224, 226 (9th Cir.1989). When reasonable, actual notice is received, it becomes a creditor's responsibility to ensure it has not violated the stay, or if it has been before receipt of actual notice, to reverse any action taken through direct and affirmative measures. *In re Smith,* 180 B.R. 311, 319–321 (Bankr. N.D.Ga.1995); *In re Sams,* 106 B.R. 485, 490–491 (S.D.Ohio.1989).

■ Courts have imposed joint and several liability against creditors and their counsel for willful stay violations. *In re Baker,* 183 B.R. 30, 33 (Bankr.D.R.I.1995); *In re Stainton,* 139 B.R. 232, 234 (9th Cir. BAP 1992); *In re Zick,* 123 B.R. 825, 828 (Bankr.E.D.Wis.1990). Creditors have been penalized where their efforts to halt collection proceedings prove ineffective. *In re Shropshire,* 25 B.R. 128, 130–131 (Bankr.W.D.Wash.1982). Further, creditors and their counsel are not allowed to sit by and watch the litigation they have commenced proceed by shifting responsibility to local authorities charged with collecting judgments obtained through their efforts. *In re Sams,* at 490–491. As stated by the *In re Sams* court:

> ... (T)he defendants [sic] argument that the Sheriff had "constructive possession" of the property and acted pursuant to the order of the Common Pleas Court and not the order of the defendants unavailing. *The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action.* ... The *Elder* court aptly stated that the *"[c]reditor sets in motion the process. The creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it (the creditor) cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary ...."* *In re Sams,* at 491 (citations omitted) (emphasis supplied).

■ Once the Court has found a willful stay violation, the debtor still must establish actual damages, though the damage provisions of section 362(h) of the United States Bankruptcy Code are mandatory. *In re Clayton,* 235 B.R. 801, 810 (Bankr.M.D.N.C.1998). Punitive damages are only awarded where the conduct is

egregious or vindictive. *In re Clayton*, at 810. The factors to be considered for the award of punitive damages include: the nature of the creditor's conduct, the creditor's ability to pay damages, the creditor's motives, and any provocation by the debtor. *In re Sumpter*, 171 B.R. 835, 844 (Bankr.N.D.Ill.1994). Retaliatory litigation to coerce settlement may serve as the basis for the assessment of punitive damages. *In re Poole*, 242 B.R. 104, 112–113 (Bankr.N.D.Ga.1999). Emotional distress damages may be awarded without medical evidence, where post-petition collection actions persist, contrary to the belief and hope of debtors that they will no longer have to endure such hardship once they file their bankruptcy case. *In re Poole*, at 112.

■■■ The Court has considered four factors in reaching the conclusion that damages should be assessed jointly and severally against the Creditor and its former counsel, Mr. O'Brien, based upon the willful stay violation and pursuant to section 362(h) of the United States Bankruptcy Code. First, the Court does not find persuasive the efforts of the Creditor's owner to distance himself from actions of his counsel. It was the Creditor through its owner that retained Mr. O'Brien to collect the accounts. The Creditor's eleventh hour claim of lack of knowledge of Mr. O'Brien's actions is a matter of concern between those two parties, in view of the ethical obligations of all attorneys to keep their clients informed. Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners*, 5 J. Bankr.Law and Practice 615, 631 (1996).

Second, after having sued, obtaining a judgment and instituting garnishment proceedings, Mr. O'Brien for the Creditor took no further action to reverse the proceedings upon receipt of the notice of the filing. Instead, he sought to shift responsibility for the litigation he commenced upon the Municipal Court. This position conflicts with the reality that the parties to the litigation control the capacity to alter the shape of or stop their own litigation, not the clerical staffs of courts. The post-petition continuation of the garnishment greatly distressed the Debtor. It not only reduced his income to meet other obligations, but also increased the existing strain upon his family.

Third, on three occasions Mr. Semons sought to amicably resolve the dispute and have the garnishment proceeding voluntarily released, through two letters and the preparation of a proposed agreed order. Such efforts are according to long-standing and well-known procedures in this Court. *In re Roush*, 88 B.R. 163 (Bankr.S.D.Ohio. 1988); *In re Newell*, 117 B.R. 323 (Bankr. S.D.Ohio.1990). These cases stand for the general proposition that before the institution of stay violation and discharge injunction proceedings, counsel for debtors and creditors, as reasonable professionals, should try voluntarily and amicably to stop collection efforts and address any resultant damages. It is bewildering, after having received two letters, that Mr. O'Brien would not simply sign the proposed agreed entry as the most simple and effective means of ending the dispute and mitigating any costs ultimately assessed against his former client.

Fourth, while it is true that this Court has no jurisdiction over the attorney disciplinary proceeding that Mr. O'Brien commenced, that fact has nothing to do with the issue of whether the proceeding itself, along with other litigation properly before this Court, are being used to harass litigants and their counsel, all subject to this Court's jurisdiction. When considering the mere two days separating the institution of the disciplinary proceeding and the recently withdrawn sanctions motion commenced for the Creditor, and the Debtors' Motion for Contempt, the Court concludes that both actions taken for the Creditor were primarily commenced and filed as retaliation and to coerce the Debtors and their counsel into settlement. In addition, the two May 16, 2000, pleadings, filed after

the willful stay violation finding, serve as further indicia that the Creditor through Mr. O'Brien was engaged in efforts to unduly complicate and increase the expense of this litigation.

For these reasons, the Court has determined that actual damages in the amount of $6,669.00, and $1,000.00 for emotional distress damages, should be assessed jointly and severally against the Creditor, its owner Garland T. Stonerock and Mr. O'Brien. Further, in view of the egregious conduct of Mr. O'Brien and the Creditor in failing to take affirmative steps to stop the garnishment and commencing further litigation and disciplinary proceedings that were motivated to increase costs and coerce settlement, the Court has determined that punitive damages in the amount of $1,000.00 should be assessed jointly and severally against the Creditor, its owner Garland T. Stonerock and Mr. O'Brien.

IT IS SO ORDERED.