**IN RE: Greg G. YANTIS, Karen Sue Yantis, Debtors**

**Greg G. Yantis, Karen Sue Yantis, Plaintiffs**

v.

**GLHS Unity Surgical Center, Defendant**

**CASE NO. 15-40234**
**PROC. NO. 15-4003**

United States Bankruptcy Court,
N.D. Indiana,
at Lafayette.

June 20, 2016

Kimberly A. Wright, Firm of Kimberly Gilbert, Lafayette, IN, for Plaintiffs.

James R. Schrier(JAR), James R. Schrier(LR), Reiling Teder & Schrier, LLC, W. Christian Meyer, Lafayette, IN, for Defendant.

### *DECISION*

Robert E. Grant, Chief Judge, United States Bankruptcy Court

On June 20, 2016.

On Tuesday, May 12, 2015, the plaintiff/debtor, Mr. Yantis, appeared for proceedings supplemental in the Tippecanoe Superior Court in connection with a judgment the defendant had previously obtained against him. Even though he and his wife had already made the decision to file a petition for relief under chapter 7, had engaged counsel to do so and essentially completed the necessary documents, Mr. Yantis did not share that information with the defendant's counsel. Instead, he agreed to the entry of a garnishment order, which was submitted to the state court on that same day. The next day, Wednesday, May 13, three things happened: the state court issued the garnishment order the parties had agreed to; debtors' counsel filed the bankruptcy case; and sent creditor's counsel a fax advising him of that fact, asking that he cease further pursuit of her clients. In response creditor's counsel put the notice in the file, marked it as inactive, and closed his file. The next week, on May 20, the state court received notice of the debtors' bankruptcy (along with the state court case number) and that fact was duly noted on its docket. What no one did throughout this time—not debtors' counsel, not creditor's counsel, and not the state court—was to see that the garnishment order issued to Mr. Yantis's employer was rescinded or that his employer was somehow notified not to take the garnished amount from his wages. So, on June 18, 2015, Mr. Yantis's wages for the week ending June 12 were garnished. This action was filed the next day. The debtors claim the creditor willfully violated the automatic stay and seek actual and punitive damages, together with attorney fees, pursuant to 11 U.S.C. § 362(k).

Creditor's state court attorney first learned of the garnishment when he received a check from the clerk on June 23rd, which he promptly returned, advising the clerk of the bankruptcy and that the money should be returned to the debtor. Although the state court did so, nothing was done to terminate the garnishment until early August and so the debtor's employer continued to withhold the garnished amounts. Although, by mid-September, all of the garnished funds (and for reasons unknown, about $50 more) were returned to Mr. Yantis, by the state court and his employer, debtors seek additional

damages for the stress caused by the garnishments, punitive damages and attorney fees. The matter is before the court following trial.

■ This case exists because, although everyone knew what should be done—terminate the garnishment—no one wanted to take the responsibility to see that it was done.[1] Debtors' counsel thought creditor's counsel should do so, and assumed he would handle it. Creditor's state court counsel assumed debtors' counsel would take care of things, or that the state court would do so, especially after he returned the garnished funds and reminded it of the bankruptcy. Since everyone assumed someone else would solve the problem, no one did anything until it became a big problem, when funds were actually garnished. Then, without even trying to seek a real solution to end the underlying cause of the problem—the active garnishment order—the debtors' response to the garnishment was to litigate.

■ The debtors' premise is that once a creditor learns of the bankruptcy, it must act affirmatively to put a stop to anything it may have set in motion prior to the filing—such as a garnishment or a sheriff's sale—and that by not doing so, thereby allowing the garnishment to continue, the defendant willfully violated the automatic stay. In this, perhaps surprisingly, the debtor is correct. Although the language of the stay has connotations of inactivity, stopping, bringing things to a halt, the stay also operates as to the "continuation" of a "proceeding against the debtor." 11 U.S.C. § 362(a)(1). The published decisions generally characterize a

recurring garnishment as the continuation of a proceeding and hold that the stay is violated when it is not brought to an end. *See, In re Scroggin,* 364 B.R. 772, 779–81 (10th Cir. BAP 2007); *In re Mims,* 209 B.R. 746, 748 (S.D.Fla.1997); *In re Kuzniewski,* 508 B.R. 678, 687 (Bankr.N.D.Ill. 2014); *In re Johnson,* 253 B.R. 857, 862 (Bankr.S.D.Ohio 2000); *In re Outlaw,* 66 B.R. 413, 419 (Bankr.E.D.N.C.1986); *In re Pody,* 42 B.R. 570, 574 (Bankr.N.D.Ala. 1984); *In re Elder,* 12 B.R. 491, 494–95 (Bankr.M.D.Ga.1981). As for willfulness, there is no requirement that the creditor act with the intent to violate the stay; acting with knowledge of the bankruptcy and the stay is all that is necessary. *In re Price,* 42 F.3d 1068, 1071 (7th Cir.1994). By not taking action to stop the garnishment upon notice of the bankruptcy, the defendant willfully violated the automatic stay.

■ Once the court finds that there has been a willful violation of the automatic stay, an injured individual "shall recover actual damages, including costs and attorney fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). As for actual damages—there are none. Everything, and more, that was withheld from the debtor's earnings has been refunded to him. As for damages for the emotional distress caused by the garnishment, they are not available. In the Seventh Circuit emotional injuries for stay violations are not compensable when there is no financial loss to tie them to by means of the clean-up doctrine. *Aiello v. Providian Financial Corp.,* 239 F.3d 876, 880 (7th Cir.2001). Furthermore, the testimony concerning

---

1. As the court noted at trial, this entire situation could have been avoided had debtors' counsel more closely observed local rule B–4002–1(a)(2) which requires the debtor to give written notice of the bankruptcy to any tribunal where proceedings are being maintained against the debtor immediately upon the entry

of an order for relief. N.D. Ind. L.B.R. B–4002–1(a)(2). *See also,* S.D. Ind. L.B.R. B–4002–1. While "the rule does not and cannot change the scope or impact of the automatic stay," it is designed to see that things like this do not happen. *See,* Commentary to proposed local rule B–402, March 1993.

the debtors' distress is so slight that the court cannot determine whether it truly existed, apart from the temporary loss of funds, or value it if it did.

■■■■ As to costs and attorney fees, debtors faced with violations of the stay have a duty to mitigate their damages, *see, In re Oksentowicz*, 324 B.R. 628, 630 (Bankr.E.D.Mich.2005) ("courts have over-whelming held that debtors have an obli-gation to attempt to mitigate damages prior to seeking court intervention") (col-lecting cases); *In re Preston*, 333 B.R. 346, 350–51 (Bankr.M.D.N.C.2005); *In re GeneSys, Inc.*, 273 B.R. 290, 296 (Bankr. D.D.C.2001), and that is something these debtors failed to do. Instead, they did the opposite. Once it became apparent that the garnishment had not been stopped, rather than contacting defen-dant's counsel and alerting him to the sit-uation, they hauled off and sued, seeking punitive damages and fees.[2] All of this might have been avoided had debtors' counsel better communicated with credi-tor's counsel, instead of taking a "shoot first and ask questions later" approach to the situation. This proceeding should not have been filed as precipitously as it was and may never have been needed at all. As such, any fees and expenses could well have been avoided, were not necessary, and so, should not be recovered. *See, In re Hutchings*, 348 B.R. 847, 903–04 (Bankr.N.D.Ala.2006) (collecting and sum-marizing cases).

■■■ Finally, punitive damages are not appropriate. There is nothing here to sug-gest that the defendant's conduct was egregious or that it was "thumbing" its nose at the debtors or the court. *See, In re Galmore*, 390 B.R. 901, 908 (Bankr. N.D.Ind.2008) (Klingeberger, J.). Instead, this is, as noted above, a case where every-body assumed that somebody else would take responsibility for doing what needed to be done, with the result that nobody did anything.

Although the defendant, GLHS Unity Surgical Center, willfully violated the auto-matic stay, the debtors are not entitled to a recovery in this action. Judgment will be entered accordingly.

---

2. While debtors are not required to inform creditor's counsel of real or perceived viola-tions of the stay before initiating litigation, professional courtesy would suggest other-wise. *See, In re Johnson*, 253 B.R. 857, 862 (Bankr.S.D.Ohio 2000). *See also, In re Pres-ton*, 333 B.R. 346, 350–51 (Bankr.M.D.N.C. 2005). Given how quickly this proceeding was filed following the first garnishment with-out first seeking some other solution, one might think the plaintiffs were playing a game of "Gotcha" with the defendant or its state court counsel. *See, In re Clayton*, 235 B.R. 801, 807 (Bankr.M.D.N.C.1988) ("The auto-matic stay was not designed to be used as a kind of spring-loaded gun against creditors who wander into traps baited by the debt-or.").