C. Kathryn Preston, United States Bankruptcy Judge
The automatic stay is one of the most fundamental protections of the Bankruptcy *438 Code. It provides debtors the breathing room they need for a fresh start and it protects the interests of other creditors by preventing a single creditor from "racing to the courthouse" and obtaining payments on its claim to the detriment of other creditors. In re Printup , 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). Rarely has the Court seen such a blatant violation of the automatic stay as is presented in this case. The conduct of Sterling A. Williams and his attorney, Percy Squire, (collectively, the "Respondents") has resulted in serious injuries to debtor Vicki M. Stringer ("Debtor"), and therefore, sanctions in the form of attorneys' fees, costs, and punitive damages will be imposed.
This matter came on for trial before the Court on April 16, 2018, pursuant to the Order Setting Pretrial Hearing and Requiring Sterling Williams and His Attorney Percy Squire to Appear and Show Cause Why They Should Not be Held in Contempt for Willful Violation of Automatic Stay and/or Discharge Injunction (Doc. # 82) ("OTSC") entered on September 29, 2017. The OTSC was issued upon the Motion to Order Sterling Williams and his Attorney Percy Squire to Appear and Show Cause Why They Should Not Be Held in Contempt for Non-Compliance of the Automatic Stay (Doc. # 57) (the "Motion"), filed by Debtor on August 25, 2017. The Motion alleged that Respondents willfully violated the automatic stay when they initiated a garnishment against Debtor in an effort to collect a judgment with full knowledge that Debtor had filed a petition for relief under Chapter 7 of the Bankruptcy Code. Present at the hearing as trial counsel were James A. Coutinho and J. Matthew Fisher, representing Debtor, and Percy Squire representing himself and Sterling A. Williams. Upon the evidence presented, the Court makes the following findings of fact and conclusions of law.
JURISDICTION
This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05-02 entered by the District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding. See 28 U.S.C. § 157(b)(2)(A) & (O) ; see also Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.) , 423 F.3d 567, 573 (6th Cir. 2005) (a motion to enforce the automatic stay is a core proceeding). An order awarding damages under § 362(k)(1) is a final order. Wicheff v. Baumgart (In re Wicheff) , 215 B.R. 839, 843 (6th Cir. BAP 1998). The Court has constitutional authority to enter a final order in this matter because a claim under § 362(k)(1) for an automatic stay violation "derives directly from the Bankruptcy Code" and "necessarily stems from the bankruptcy itself." WD Equipment v. Cowen (In re Cowen) , 849 F.3d 943, 948 (10th Cir. 2017) (internal quotation marks omitted).
FINDINGS OF FACT
Debtor is the successful author of multiple urban fiction novels. She wrote her first novel in 1998 and became a published author with Simon & Schuster, Inc. in 2003. She has written thirteen novels, twelve of which were published by Simon & Schuster. In 2000, Debtor formed Triple Crown Publications LLC. The company was involved in the publishing of other author's works, not Debtor's. The company was dissolved in 2010.
The typical publishing agreement between Debtor and Simon & Schuster entailed the following: Simon & Schuster would purchase the literary rights to Debtor's works and would edit, publish, and market the novels. Simon & Schuster *439 would also give Debtor an advance, which would be repaid by Debtor through book sales. When the book sales exceeded the amount required to repay the advance, Debtor was entitled to the residual royalties. Debtor receives royalties twice a year from Simon & Schuster, based on the previous year's sales of her books. In one of the publishing agreements, dated May 16, 2011, Triple Crown Publications (not Triple Crown Publications LLC) was given as the "proprietor" of two of Debtor's novels: "Crackhead" and "Crackhead 2."[1] Triple Crown Publications LLC had no ownership interest in the novels and was not entitled to any residual royalties resulting from sales of the novels. Debtor neither transferred nor assigned her intellectual property rights with respect to the novels to Triple Crown Publications LLC.
Debtor and Mr. Williams had been involved in business dealings that evidently did not end well. Mr. Williams sued Debtor, and on October 20, 2014, the Franklin County Court of Common Pleas found Debtor and Triple Crown Publications, LLC to be jointly and severally liable to Mr. Williams for fraudulent inducement and breach of contract in the amount of $71,960.80.
On March 23, 2017, Debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code, Schedules, and Statement of Financial Affairs. On Debtor's petition, she stated that she had not used any business names or employee identification numbers in the last eight years. On Schedule I, Debtor stated that she receives $400 per month in "Royalties from book sales." Debtor receives residual royalties twice a year based on the previous year's sales of her books. Debtor divided her estimated royalties over a 12 month period for purposes of filling out her Schedule I. On Schedule A/B, Debtor stated that she has "Ownership/License/Rights to royalty income" from seven books and "Agent Rights" to five books. Debtor explained that the books in which she has "Agent Rights" are the books that she wrote under a pen name. These are the twelve books that were published by Simon & Schuster. Schedule A/B also disclosed that Debtor was entitled to "Royalty Income earned but unpaid" in the amount of $3,284.45, based on 2016 sales of Debtor's novels. These royalties are at the center of the controversy between Debtor and Respondents.
There is no dispute that Respondents received notice of Debtor's bankruptcy. On Schedule E/F and on her mailing matrix filed with the Court, Debtor listed "Net Worth," which is Mr. Williams' business, as a creditor in the amount of $70,136.92. The company's correct address was listed. Mr. Squire was expressly hired by Mr. Williams for the purpose of representing Williams, a judgment creditor, during Debtor's bankruptcy proceedings. Mr. Squire filed a Notice of Appearance and Request for Notices (Doc. # 15) on April 24, 2017.
At the § 341 Meeting of Creditors, Debtor notified the Chapter 7 Trustee that she was entitled to the royalties, and she gave the Trustee copies of her pay advices from Simon & Schuster. On August 16, 2017, the Trustee filed a Substitute Trustee's Notice of Abandonment (Doc. # 50) (the "Notice of Abandonment"),[2] stating *440 that the Trustee was abandoning "Royalty Income Earned But Unpaid (due from Simon & Schuster to Vickie M. Stringer, Debtor" because "there is little or no equity in the asset(s) being abandoned and, after consideration of liens, exemptions, and/or costs of sale, the asset(s) are of inconsequential value or are burdensome to the bankruptcy estate."
On August 15, 2017, the day after the Trustee filed and served the initial Notice of Abandonment, Mr. Squire-on behalf of Mr. Williams-filed an Affidavit and Order of Garnishment in the Franklin County Court of Common Pleas against Triple Crown Publications, LLC and Debtor, garnishing the unpaid royalties from the "Simon & Schuster account belonging to Vickie Stringer." In the meantime, Debtor had fallen into default of her home mortgage, but had successfully negotiated a modification agreement with the mortgage holder. A trial period precedent to finalizing the modification agreement required her to make certain monthly payments. Absent the garnishment, she would have had enough money to meet this requirement. When the garnishment impeded her access to the royalties, she was unable to make the payments. The mortgage holder gave her until August 11, 2017 to cure her default of the trial period payments, and enter into the loan modification agreement. In light of the garnishment, Simon & Schuster declined to release the royalties to her. Debtor's home is currently in foreclosure.
On August 25, 2017, Debtor filed the Motion. Debtor asserted that Respondents willfully violated the automatic stay by filing the garnishment, and asked for damages, including punitive damages.
After the garnishment, Debtor tried, without success, to work with Simon & Schuster to obtain a release of the garnished funds. She also filed an emergency motion in the Franklin County Court of Common Pleas to release the garnishment. On September 6, 2017, upon finding that Debtor had filed for bankruptcy, the Franklin County Court of Common Pleas entered an order directing its clerk of court to release the garnishment commenced against Debtor and Triple Crown Publications LLC and to notify Simon & Schuster that the garnishment had been released in full. The court also ordered the clerk to return to Debtor any funds held by the clerk. During this time, communications were ongoing between Mr. Squire and Simon & Schuster, in which Mr. Squire threatened Simon & Schuster with litigation if it paid the royalties to Debtor. Figuratively speaking, Debtor was yelling in Simon & Schuster's other ear, demanding that it remit the royalties to her.
The next day, Mr. Squire (acting on behalf of Mr. Williams) removed the state court action to the bankruptcy court.[3] Mr. Squire argued that "[i]t will frustrate [the bankruptcy court's] jurisdiction and cause irreparable harm to Sterling Williams if, notwithstanding abandonment and a timely filed garnishment the royalties are released to Debtor." In an email exchange, Debtor told Mr. Squire that she was entitled to the royalties because of the state court order releasing the garnishment. Mr. Squire responded that the royalties "are the subject matter of an action pending in federal court. Any steps to distribute them will frustrate that court's ability to provide a remedy to Sterling Williams and is sanctionable." Debtor had made her mortgage *441 payments in January, February, and March, 2017, but was relying on the royalties to make further payments pursuant to the mortgage modification agreement trial period. Without the royalties, she was unable to meet the financial obligation.
Simon & Schuster ultimately paid the royalties to Debtor, but too late for her to enter into the mortgage modification agreement with her lender and save her home from foreclosure. The mortgage holder had initiated foreclosure proceedings, whereupon Debtor was no longer eligible for the modification program. Also as a result of Respondents' actions and aggressive posture toward Simon & Schuster, Debtor lost a potential contract with Simon & Schuster for her last completed book, which had been under negotiation prior to Respondents' actions. Simon & Schuster were contemplating advancing $50,000 to Debtor, but after the events described, it declined to publish her thirteenth book. After seventeen years of doing business with Debtor, Simon & Schuster terminated its publishing relationship with her. She has approached other publishers, but has not been successful due to the particular culture of the publishing industry. Debtor has been under great stress and anguish over the loss of her home and Respondents' aggressive actions and the infringement on her fresh start envisioned by the Bankruptcy Code. Due to this, Debtor has lost her creative drive-she has been unable to write or start on new works. She now works as a housekeeper for a living.
The trial was initially set for January 30, 2018. However, on January 22-eight days before trial -Respondents filed the Motion of Sterling A. Williams and Percy Squire to Withdraw Reference (Doc. # 127) (the "Motion to Withdraw Reference"). Because of this, the Court rescheduled the trial to April 16, 2018. On April 12, 2018 the District Court entered an opinion and order denying the Motion to Withdraw Reference, noting that Respondents "waited nearly three months, until January 22, 2018-approximately one week before the schedule trial-to move for withdrawal. At best, this was unnecessary delay. At worst, given the proximity to the scheduled trial, it was an intentional stalling tactic."
In November 2017, Debtor hired attorneys James Coutinho and Matthew Fisher to represent her in her action to pursue Respondents for violating the automatic stay. As of March 31, 2018 Debtor has incurred $19,008.17 in attorneys' fees for legal services related to the Motion and the OTSC.
CONCLUSIONS OF LAW
11 U.S.C. § 362(a) provides in relevant part that the filing of a petition for relief under the Bankruptcy Code operates as a stay of:
(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ....
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case .... [and]
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case ....
11 U.S.C. § 362(a). A violation of the automatic stay is punishable as contempt of court, and subject to sanctions. Section 362(k)(1) provides in pertinent part that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys'
*442 fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to recover under § 362(k), an individual must establish the following three elements: "(1) that a violation of the automatic stay occurred; (2) that the violation was committed willfully; and (3) that the violation injured the individual seeking damages." Barclay v. Reimer & Lorber Co. LPA (In re Barclay) , No. 05-8019, 2006 WL 238139, at *4-5, 2006 Bankr. LEXIS 110, at *12-13 (6th Cir. BAP Feb. 1, 2006) (citing In re Skeen , 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000) ).
There can be no dispute that an attempt to garnish a debtor's property is a violation of the automatic stay. See , e.g. , In re Russell , 441 B.R. 859, 861 (Bankr. N.D. Ohio 2010) (citing In re Scroggin , 364 B.R. 772, 779-80 (10th Cir. BAP 2007) ) (holding that creditor violated the stay by allowing debtor's post-petition wages to be garnished on two occasions).[4]
I.
At a pretrial hearing and in their filings, Respondents attempted to argue that they did not violate the automatic stay because the royalties were assets of a trade name of Debtor and/or were not disclosed. Respondents' arguments are spurious. Respondents conceded at the trial, as they must, that there is no distinction in the law between a person and that person's trade name or "dba" or sole proprietorship. Section 541 of the Bankruptcy Code is crystal clear that, with several exceptions not applicable here, all of a debtor's assets are assets of the bankruptcy estate when the debtor files a petition for relief under the Bankruptcy Code. 11 U.S.C. § 541. Section 541 does not except assets garnered through or "owned by" a proprietorship or trade name. Nor does it except undisclosed property. See , e.g. , Samson v. Western Capital Partners, LLC (In re Blixseth) , 684 F.3d 865, 871 (9th Cir. 2012) (property of the estate "includes property not identified or listed on the bankruptcy schedules.").
And § 362 of the Bankruptcy Code is clear that a debtor, the debtor's assets, and the assets of the bankruptcy estate, are protected under the umbrella of the automatic stay. See 11 U.S.C. § 362. Its reach is intentionally broad, far reaching and pervasive. See 3 COLLIER ON BANKRUPTCY P. 362.03 (16th ed. 2016) (noting the stay's "extremely broad" scope). Section 362 does not except from, qualify, or compromise its protection of undisclosed assets or assets procured through operation of a proprietorship or use of a trade name. See generally 11 U.S.C. § 362.
When property is abandoned, it is no longer property of the estate. See 11 U.S.C. § 554. The automatic stay does not expressly prohibit actions taken against property that is no longer property of the estate. 11 U.S.C. § 362(c)(2) ("the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate ...."). However, even if property ceases to be included in the bankruptcy estate, the automatic stay still applies to stay commencement or continuation of a judicial action or proceeding against the debtor that was or could have been commenced *443 before the debtor filed her petition. 11 U.S.C. § 362(a)(1). Section 362(c) expressly states that the stay of any other act continues until the earliest of the time the case is closed, the case is dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c)(2). One of the primary purposes of § 362 is to protect assets that may be necessary for the debtor's fresh start. See 3 COLLIER ON BANKRUPTCY P. 362.03 (16th ed. 2016).
There is simply no basis for the self-help approach pursued by Respondents. Moreover, the evidence in this case does not show that Debtor failed to disclose her royalties. In fact, Debtor clearly and accurately disclosed the rights to her royalties in her schedules. In any event, it appears that Respondents abandoned that theory at trial, and wisely so. They did not raise the theory in opening or closing arguments. Nor did they deny at trial that the royalties they garnished were Debtor's property.[5] Instead, Respondents argued that even if there was a stay violation, it was not a "willful" violation because they did not intend to violate the stay. Again, Respondents are undeniably in error.
II.
It is disturbing to the Court that Mr. Squire, an attorney of some experience, evidently made no effort to research the standards for "willfulness," or consult with knowledgeable colleagues, because the law is crystal clear: "willfulness" in this context does not require proof of a specific intent to violate the stay, but only an intentional act by a party aware of the bankruptcy filing. Indeed, the actor need not have knowledge of the automatic stay. Any deliberate act taken with mere knowledge of the pendency of the bankruptcy case is almost universally interpreted to be a willful violation of the stay. See , e.g. , Lansdale Family Restaurants, Inc. v. Weis Food Service (In re Lansdale Family Restaurants, Inc.) , 977 F.2d 826, 829 (3rd Cir. 1992) ("It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed.") (citing In re University Medical Center , 973 F.2d 1065 (3d Cir. 1992) ). Once the creditor becomes aware of the filing of the bankruptcy petition and therefore the automatic stay, any intentional, deliberate act that results in a violation of the stay is "willful." No specific intent to violate the stay or malice is required.[6]
And Respondents' excuses do not avail them. Mr. Squire suggested that he did not act willfully because Debtor failed to disclose in her bankruptcy petition and schedules that she conducted business with a trade name of "Triple Crown Publications," and that he did not believe that the stay applies to assets of an undisclosed trade name (although he admitted that there is no distinction in the law between an individual and his or her trade name). But the law is clear that a belief that property is not included in the *444 bankruptcy estate does not obviate compliance with § 362. Chesnut , 422 F.3d at 302. As pointed out by the Chesnut court, there are procedures outlined in § 362(d) for one to seek relief from stay, and a party's belief that he may not be bound by the automatic stay is not a basis on which a party may disregard its obligation to comport with the Bankruptcy Code. See Chesnut , 422 F.3d at 302-04. Even a party's good faith belief that it has a right to an asset is not relevant to whether the act was "willful" or whether compensation must be awarded. In re Taylor , 884 F.2d 478, 482 (9th Cir. 1989) (quoting In re Bloom , 875 F.2d 224, 227 (9th Cir. 1989) ).
So how could Respondents' actions-taken with their knowledge that Debtor filed a bankruptcy petition and that any assets of Triple Crown Publications are actually Debtor's assets-be any less willful? Beliefs, however reasonable, have no bearing on willfulness. See Johnson , 501 F.3d at 1173 (citing Chesnut , 422 F.3d at 302 ; Kaneb , 196 F.3d at 268-69 ; Taylor , 884 F.2d at 483 ). "Willfulness is to be 'liberally construed to bolster the protections of the automatic stay,' and is 'designed to ensure compliance with the stay by encouraging creditors to seek relief from the court whenever they are on notice of even a potential stay violation'...." Johnson , 501 F.3d at 1173 (internal citations omitted).
III.
Next, Respondents posited that Debtor is not entitled to the protections of the automatic stay because she has acted in bad faith in this bankruptcy case. Specifically, they argue that their conduct should be vindicated because Debtor failed to disclose in her filings and at the § 341 Meeting of Creditors: (1) that she was entitled to royalties from Simon & Schuster; (2) that she has or had an interest in several business entities; (3) that she conducted business as Triple Crown Publications; and (4) that she used pen names. Here, Respondents cite the one and only one case they cite in support of their entire defense: Baxter v. Sarmadi , 602 F. Appx. 322 (6th Cir. 2015).[7] Respondents are grasping at straws.
In Baxter , a creditor had foreclosed its interest in the debtor's real property and proceeded with a foreclosure sale the day after the debtor filed a Chapter 13 bankruptcy petition. After the foreclosure sale, the creditor filed a motion for relief from stay in the bankruptcy court, asking the court to "annul" the automatic stay and "ratify" the foreclosure proceedings. The creditor argued that the debtor's failure to file his petition in good faith constituted "cause" under 11 U.S.C. § 362(d). The court granted the creditor's motion, finding that the debtor filed his petition in bad faith because, among other things, the debtor failed to provide for the payment of the creditor's claim in his plan and failed to insure the real property. The Sixth Circuit Court of Appeals affirmed the bankruptcy court's decision to annul the automatic stay and ratify the foreclosure proceedings that had taken place during the pendency of the stay. The court reasoned that " '[a] debtor's lack of good faith in filing a bankruptcy petition may be the reason for lifting the automatic stay,' and would constitute 'cause' under [ § 362(d) ]." Baxter , 602 F. Appx. at 325 (quoting *445 In re Laguna Assocs. Ltd. P'ship , 30 F.3d 734, 737-38 (6th Cir. 1994) ).
Baxter is distinguishable from the instant case in many respects. First, in Baxter , the creditor had no knowledge of the commencement of the bankruptcy case prior to the foreclosure sale. Here, it is uncontroverted that Respondents had knowledge of this case prior to initiating the garnishment. Second, the posture is vastly different: The issue before the court was instigated by a properly filed motion for relief from the automatic stay. In this case, the matter before the Court is a motion for sanctions for Respondents' violation of the stay after Respondents refused to release the garnishment. In Baxter , the issue before the court was the propriety of annulling the stay. Here, Respondents have not requested that the Court annul the stay and ratify the garnishment.[8] Instead, they argued that because the royalties were abandoned, they were no longer property of the estate, rendering the stay inapplicable. Respondents' position was without merit, but if they thought there was a basis for relief from the stay, they should have filed the motion before initiating garnishment proceedings.
Finally, the trial court in Baxter found bad faith by the debtor. In this case, the evidence does not show that Debtor filed or prosecuted her case in bad faith. First, she did not fail to disclose her rights to the royalties. Second, Debtor credibly explained that she did not list several limited liability companies and/or other business entities because either (a) they have not conducted business in some time, if ever, and she thought them defunct, or (b) she did not have an interest in the entity. Debtor's inadvertent failure to disclose business entities in which she had an interest that were technically in existence when she filed for bankruptcy does not mean that she filed her case in bad faith. There is no evidence of intent to conceal the business entities and no evidence of other material non-disclosure. Even if the evidence did support the theory that Debtor acted in bad faith, Baxter does not stand for the proposition that a debtor's lack of good faith is a defense in a contempt action for violation of the automatic stay.
What Respondents are suggesting is that they, or, by logical extension any party in interest, should be able to decide under what circumstances the automatic stay should apply. The argument is wholly without merit. To allow a creditor to shape the scope of the stay would encourage creditor abuse. Knowing a debtor is in difficult financial circumstances and may not be able to defend his or her rights, a creditor could simply seize property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after seizure, when the harm may be more difficult to remedy. Given that in some instances the subject property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his or her wrongfully seized assets. " 'Parties may not make *446 their own private determination of the scope of the automatic stay without consequences.' " In re Jean-Francois , 532 B.R. 449, 460 (Bankr. E.D. N.Y. 2015) (quoting In re Diviney , 211 B.R. 951, 969 (Bankr. N.D. Okla. 1997) ). In conclusion, the Court finds Respondents in contempt for willful violation of the automatic stay.
IV.
At this point, the Court must address Mr. Squire's efforts to fall on his sword for his client. He urges the Court to lay all blame at his feet and absolve Mr. Williams of any responsibility for the willful stay violation. This the Court will not do. Under well-established principles of agency law, a principal is jointly and severally liable for the tortious actions of his agent if the agent is authorized to act. See RESTATEMENT (THIRD) OF AGENCY §§ 1.01, 7.03 (2008). Indeed, bankruptcy courts have routinely imposed joint and several liability on creditors and their attorneys for willful stay violations. See , e.g. , In re Webb , 470 B.R. at 446 n. 4 ; Vasquez v. Sears, Roebuck & Co. (In re Vasquez) , 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) ; In re Baker , 183 B.R. 30, 33 (Bankr. D.R.I. 1995) ; In re Johnson , 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000).
And in various contexts, the Supreme Court has upheld the principle that clients must be held accountable for the acts and omissions of their attorneys. Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship , 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ; Link v. Wabash R. Co. , 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ; United States v. Boyle , 469 U.S. 241, 252, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). Here, there is no question that Mr. Squire was acting on behalf of Mr. Williams, at Mr. Williams' request, to help Mr. Williams collect his debt from Debtor. Mr. Williams retained Mr. Squire to collect the debt due Mr. Williams and placed no restrictions on how Mr. Squire was to discharge this mission. Mr. Williams is equally responsible for the conduct violating the automatic stay.
V.
Finally, the Court turns to the issue of damages. Debtor seeks actual damages comprised solely of reimbursement of her attorneys' fees and costs, and punitive damages.
The bankruptcy court has exclusive jurisdiction over sanctions for a stay violation. See MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913 (9th Cir. 1996) ; Halas v. Platek , 239 B.R. 784, 792 (N.D. Ill. 1999). Pursuant to 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). If a willful violation of the stay is found, an award of actual damages is mandatory. 11 U.S.C. § 362(k)(1). However, "damages must still be proven and the award must be reasonable and supported by the evidence." Cousins v. CitiFinancial Mortgage Co. (In re Cousins) , 404 B.R. 281, 289 (Bankr. S.D. Ohio 2009). The damages must be calculated to a "reasonable degree of certainty and cannot be based on mere speculation, guess, or conjecture." Cousins , 404 B.R. at 289 (citation omitted). Movant has the burden of proof as to her entitlement to any damages. Sharon , 234 B.R. at 687.
Respondents have pointed to Debtor's conduct in connection with this case (specifically, her failure to disclose associated business entities, pen names and trade names), and assert that her malfeasance should diminish any damages.
*447 While the Court does not wish in any way to countenance bad faith, Debtor's actions are not a defense or mitigating factor to the violation of the automatic stay. See In re Holman , 92 B.R. 764, 770 (Bankr. S.D. Ohio 1988). As acknowledged by counsel, the automatic stay is a cornerstone of the Bankruptcy Code, and one of its most important provisions. Its enforcement is paramount to the protection of those seeking relief, the debtor's fresh start, and the bankruptcy estate.
Clearly, Debtor is entitled to an award of her attorneys' fees through March 31, 2018 in the amount of $19,008.17, for the fees incurred between that date and the trial. Respondents have not asserted that the fees are unreasonable, and indeed, they would be hard pressed to do so. In most instances where there is an obvious stay violation, the creditor will acknowledge it violated the stay and seek to mitigate any damages caused thereby. This avoids the necessity of an expensive trial and the attendant legal fees and costs. In the instant case, because of their trial tactics, including but not limited to advancing meritless theories, filing various motions (at least one of questionable merit), stonewalling Debtor's efforts to take depositions, and other activities unusual to stay litigation, Respondents have exacerbated the fees normally seen for motions such as Debtor's.[9] To the extent that Respondents elicited testimony at trial about the fees intending to illustrate that they are not reasonable, the Court has reviewed the itemization and considered the evidence presented and finds the fees requested to be reasonable and necessary for the protection of Debtor's rights and redress for her injuries. Counsel for Debtor shall be afforded an opportunity to supplement the fee itemization entered as an exhibit at the trial.
To her credit, Debtor did not request damages for her injuries other than the legal fees and costs, which injuries the Court views as significant: the loss of the relationship with Simon & Schuster, the loss of a book contract that was in the works at the time Debtor commenced her bankruptcy proceeding, the loss of the mortgage modification, the stress and anxiety, and her inability to continue writing. Debtor's counsel acknowledged that the damages for these injuries are difficult to quantify. That, in the Court's view, is one of the reasons that punitive damages are available to an injured debtor pursuant to § 362(k).[10]
However, the Court is constrained as to any award of punitive damages. As the Sixth Circuit noted in Bach v. First Union Nat Bank , 486 F.3d 150 (6th Cir. 2007), courts must assess the following factors when deciding whether to award punitive damages: (1) whether the harm caused was physical as opposed to economic; (2) whether the conduct evinced an indifference to or a reckless disregard of the rights, health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct *448 involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery or deceit. Bach , 486 F.3d at 153.
Mr. Squire is an accomplished, experienced attorney of some standing in this legal community. He has also been involved in numerous bankruptcy proceedings in this district. The Court finds disingenuous his testimony that he believed that the automatic stay did not apply to Debtor's royalties, or that Debtor's failure to disclose a trade name and inactive business relationships somehow gave him leave to engage in contemptuous conduct. But if he truly did not know or understand the scope and gravity of the automatic stay, he had an obligation to read the Bankruptcy Code and research the matter to determine his and his client's rights.[11]
There is no evidence that Debtor suffered any physical injuries from Respondents' violation of the automatic stay, but there is no doubt that she was already operating under financial vulnerability and Respondents' attempts to grab her royalties aggravated her situation. Respondents engaged in numerous violations: filing the garnishment and refusing to release it, contacting Simon & Schuster for the purpose of keeping them from remitting the royalties to Debtor, and also perhaps the removal of the state court action to this Court with the accompanying threats to Debtor. Debtor lost her home to foreclosure as a result of Respondents' actions. She suffered other significant injuries manifested in the loss of the valuable business relationship with Simon & Schuster, loss of the opportunity to publish her last completed book, the stress and anxiety, and perhaps most damaging, loss of her ability to write. Respondents' conduct evinced at least an indifference to or a reckless disregard of Debtor's rights, and at worst, an arrogant defiance of Federal bankruptcy law.
Additionally, Respondents' heavy handed litigation tactics, and repeated and stubborn refusal to acknowledge the willful violation and to reverse the acts to restore the status quo, were egregious and exacerbated the harm to Debtor. Thus, the Court can only find that the harm was the result of intentional malice. And, in light of the meritless defenses thrown up by Respondents, the Court believes that the actual damages which will be awarded as indicated above will not be sufficient to deter them from violating the stay in the future. See Archer v. Macomb Cty. Bank , 853 F.2d 497, 500 (6th Cir. 1988).
Therefore, in addition to reimbursement of legal fees and costs, the Court will award punitive damages to Debtor in the sum of three times the attorneys' fees and costs awarded by the Court. The fees and the punitive damages will be specifically set in a future judgment after Debtor's counsel files a supplemental itemization of fees. Mr. Williams will not be allowed to setoff the amount due Debtor against his prepetition debt owed him by Debtor inasmuch as setoff of postpetition debt against prepetition debt is improper. In re Ruiz , 146 B.R. 877, 879 (Bankr. S.D. Fla. 1992) ; In re Sluss , 107 B.R. 599, 603 (Bankr. E.D. Tenn. 1989).
CONCLUSION
The Court finds Percy Squire and Sterling Williams in contempt for willful violation of the automatic stay, and subject to *449 sanctions for their misconduct. Within ten (10) days of entry of this opinion, counsel for Debtor shall file a supplemental itemization of services rendered after March 31, 2018, reflecting the amount of additional fees and costs incurred after March 31, 2018. Respondents may file an objection to particular entries in the supplement if they deem appropriate within seven (7) days after service of any supplemental itemization filed by Debtor's counsel. The Court will consider the filings and enter a judgment thereafter.
IT IS SO ORDERED.

It is unclear what "proprietor" means in this context, but it appears that naming Triple Crown Publications as the "proprietor" of these novels was done for marketing purposes only.

On August 14, 2017, the Trustee filed his initial Notice of Abandonment. On August 15, 2017 the Clerk's Office entered a Notice of Deficient Filing regarding the initial Notice of Abandonment because the document did not contain electronically generated text in compliance with ECF Procedure 5. The Trustee filed an acceptable substitute PDF on August 16, 2017.

The Court ultimately remanded the case back to state court because removal was improper.

Moreover, § 362 imposes an affirmative duty upon creditors to stop garnishment proceedings and release funds received post-petition upon learning of the bankruptcy filing. See , e.g. , In re Manuel , No. 14-53487, 2014 WL 7405471, at *2, 2014 Bankr. LEXIS 5177, at *6 (Bankr. E.D. Mich. Dec. 24, 2014) : see also In re Forkner , No. 10-01585, 2010 WL 5462543, at *2, 2010 Bankr. LEXIS 4593, at *5 (Bankr. N.D. Iowa Dec. 22, 2010) ; Spanger v. Latham, Stall, Wagner, Steel & Lehman, P.C. , No. CIV-04-508-L, 2005 WL 1950364, at *1, 2005 U.S. Dist. LEXIS 46883, at *2 (W.D. Okla. Aug. 15, 2005).

Whether or not Respondents intended to advance this theory, it is clear that Respondents' conduct was a violation of the automatic stay.

The Court should not need to cite caselaw for this basic proposition as the cases are legion, but will: Johnson v. Smith (In re Johnson) , 501 F.3d 1163, 1172 (10th Cir. 2007) ; Brown v. Chesnut (In re Chesnut) , 422 F.3d 298, 302 (5th Cir. 2005) ; Fleet Mortgage Group, Inc. v. Kaneb , 196 F.3d 265, 269 (1st Cir. 1999) ; In re Webb , 470 B.R. 439, 454 (6th Cir. BAP 2012) ; Transouth Fin. Corp. v. Sharon (In re Sharon) , 234 B.R. 676, 687 (6th Cir. BAP 1999) ; Lofton v. Carolina Fin., LLC (In re Lofton) , 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) ("willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay.").

The Court notes that in the Sixth Circuit, cases not recommended for full text publication are not considered binding precedent. See, e.g., Crump v. Lafler, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished decisions in the Sixth Circuit are, of course, not binding precedent ...").

Section 362(d)"expressly permits the bankruptcy court to annul the automatic stay. This power to annul 'permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay ...' " Easley v. Pettibone Mich. Corp. , 990 F.2d 905, 910 (6th Cir. 1993) (quoting 2 Collier on Bankruptcy § 362.07) (emphasis added). Had Respondents asked to annul the automatic stay in their motion, the request would likely have been denied due to Respondents' knowledge of the bankruptcy filing and the automatic stay. Annulling the automatic stay and ratifying an action taken in violation of the stay are drastic remedies, which courts should grant only in limited equitable circumstances. Easley , 990 F.2d at 911.

Notably, a creditor who unsuccessfully appeals a judgment awarding damages and fees for a willful stay violation may also run the risk of having to pay the attorneys' fees pendent to the appeal. See , e.g. , Mantiply v. Horne (In re Horne) , 876 F.3d 1076, 1081-82 (11th Cir. 2017).

The imposition of punitive damages is discretionary under § 362(k). And because costs and attorneys' fees are explicitly included as actual damages under § 362(k), courts have awarded punitive damages under that section even when the only actual damages shown were costs and attorneys' fees. In re Bivens , 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004) ; In re Johnson , 548 B.R. 770, 774 fn.1 (Bankr. S.D. Ohio 2016) ; In re Gault , 136 B.R. 736, 739 (Bankr. E.D. Tenn. 1991).

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Ohio Rules of Prof'l Conduct r. 1.1 (2017) (emphasis in original).